**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| JOSHUA CACHO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | No. 3:25-cv-00169-KC |
| ROBERTS MARKLAND, LLP, LAW | § | |
| OFFICE OF TRE MEREDITH, PLLC, and | § | |
| QUINTESSA LLC, | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANT QUINTESSA LLC'S 12(b)(2) MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

STATEMENT OF ISSUES.................................................................................................IV

I.      INTRODUCTION ..............................................................................................1

II.     FACTUAL BACKGROUND.............................................................................2

        A.      Plaintiff's Communications with Quintessa. ..........................................2

        B.      Plaintiff Demands a $75,000 Settlement from Quintessa.......................4

        C.      Plaintiff Learns that Quintessa did not Place Call Nos. 1 through 7.............5

        D.      Plaintiff Files this Lawsuit Alleging that Quintessa Placed Call Nos. 1
                through 12 and 14..................................................................................6

III.    ARGUMENT......................................................................................................7

        A.      Legal Standard.........................................................................................7

        B.      Plaintiff's Jurisdictional Allegations are Insufficient to Support Specific
                Personal Jurisdiction over Quintessa. ....................................................8

                1.      Plaintiff's first jurisdictional allegation is factually and legally
                        insufficient to support specific personal jurisdiction.....................9

                2.      Plaintiff's second jurisdictional allegation is legally insufficient to
                        support specific personal jurisdiction and relies on factual
                        allegations that are demonstrably false.......................................10

                        i.      Quintessa did not place Call Nos. 1 through 7 or 13.............11

                        ii.     Call Nos. 8 through 12 and 14 were placed in response to
                                Plaintiff's inquiry...................................................12

                3.      Plaintiff's third jurisdictional allegation is legally insufficient to
                        support specific personal jurisdiction. .......................................16

        C.      Exercising Specific Personal Jurisdiction Over Quintessa Would Offend
                Traditional Notions of Fair Play and Substantial Justice...........................17

        D.      Dismissal of Plaintiff's TCPA Claim Requires Dismissal of Plaintiff's
                Pendent State Law Claims.....................................................................19

IV.     CONCLUSION .................................................................................................20

---

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000)................................................7

*Bass v. Parkwood Hosp.*, 180 F.3d 234 (5th Cir. 1999).....................................................................19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .....................................................................7

*Butera v. Sugarhouse Real Estate Grp., L.C.*, No. 2:25-CV-00014-DAK, 2025 WL 1798968 (D. Utah June 30, 2025) ......................................................................................................14

*Cacho v. Amity One Debt Relief*, Case No. 3:24-CV-00160-KC (W.D. Tex. Mar. 16, 2024)....................10

*Cacho v. JGW Debt Settlement, LLC*, Case No. 3:25-CV-00142-DB (W.D. Tex. Apr. 25, 2025)........................................................................................................................................10

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190 (5th Cir. 2019) .........................................................7

*Casares v. Mile High Law Firm, LLC*, No. 4:11CV465, 2011 WL 13323986 (E.D. Tex. Oct. 21, 2011) ......................................................................................................................10

*Check, LLC v. First Bank of Delaware*, 774 F.3d 351 (6th Cir. 2014) .............................................14

*Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.,* 785 F.2d 1330 (5th Cir. 1986) ...................7

*Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471 (E.D. Tex. 2019) .........................9

*Cunningham v. Radius Glob. Sols., LLC*, No. 4:20-CV-00294, 2021 WL 2258743 (E.D. Tex. June 3, 2021).......................................................................................................................19

*Cunningham v. Upwell Health, LLC*, No. 4:19-cv-894-ALM-CAN, 2020 WL 4723175 (E.D. Tex. July 21, 2020)................................................................................................16

*Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309 (5th Cir. 2025) ..................................................8

*Libersat v. Sundance Energy, Inc.*, 978 F.3d 315 (5th Cir. 2020)............................................8, 10, 17

*Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999) ...................................................................7

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) .........................................7

*Osborne v. Beacon Hill Staffing Grp.*, No. 3:13-CV-3820-L, 2014 WL 1724479 (N.D. Tex. Apr. 30, 2014) ..................................................................................................................10

*Pace v. Cirrus Design Corp.*, 93 F.4th 879 (5th Cir. 2024) ...............................................................8

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) .....................8

*Salaiz v. Oscar Mgmt. Corp.*, No. EP-22-CV-00114-DCG, 2025 WL 1794447 (W.D. Tex. June 25, 2025) ..............................................................................................................13

*Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96 (5th Cir. 2018) ................................................16

*Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council*, 152 F. Supp. 2d 1278 (D. Kan. 2001) ..................................................................................................14

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006) ........................................ 8, 9, 13

*Smith v. Aegon USA, L.L.C.*, No. 24-60115, 2025 WL 1355137 (5th Cir. May 9, 2025) ................... 8, 11

*Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) ............................................................................11

*Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554 (S.D. Tex. 2021) ................................ 13, 14

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ..........................................................19

*Walden v. Fiore*, 571 U.S. 277 (2014) ..............................................................................................16

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235 (5th Cir. 2008) ................................8

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ................................................ 13, 14

*Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994) ....................................................................................7

*Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217 (D. Ariz. Feb. 11, 2021) ............................................................................11

*Wong v. Stripling*, 881 F.2d 200 (5th Cir. 1989) ..............................................................................19

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 462 (1985) ..................................................17

## STATUTES

47 U.S.C. § 227(b)(1)(C)(i) ..............................................................................................................14

47 C.F.R. § 64.1200(f)(6) ................................................................................................................15

47 C.F.R. § 64.1200(a)(10) ..............................................................................................................15

## MISCELLANEOUS

FED. R. CIV. P. 12(b)(2) ..................................................................................................................7

## STATEMENT OF ISSUES

1.    Whether Plaintiff's claims against Defendant Quintessa LLC should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

Defendant Quintessa LLC ("Quintessa") moves to dismiss Plaintiff Joshua Cacho's Original Complaint (Dkt. #3) pursuant to Federal Rule of Civil Procedure 12(b)(2).

## I.      INTRODUCTION

Plaintiff Joshua Cacho brought this lawsuit in the Western District of Texas because he claims this Court has federal question jurisdiction over his Telephone Protection Consumer Act (TCPA) claim. *See* Dkt. #3 ¶ 5. In relevant part, Plaintiff alleges that in March and April 2025, he received 9 phone calls and 5 text messages in violation of the TCPA. *See* Dkt. #3. Plaintiff's Complaint should be dismissed because this Court lacks personal jurisdiction over Quintessa for Plaintiff's TCPA claim, which is the only claim that confers federal question jurisdiction on this Court.

Plaintiff does not allege that Quintessa is subject to general personal jurisdiction in this Court. Instead, Plaintiff alleges that only specific personal jurisdiction exists, and primarily because Quintessa "called Plaintiff's El Paso-area phone number (915) to generate leads for their services." Dkt. #3 ¶ 7(b). Specifically, Plaintiff alleges that Quintessa placed Call Nos. 1 through 12 and 14 to Plaintiff's phone number ending in "5482." However, as evidenced by Quintessa's sworn declarations and evidence attached thereto, before filing his Complaint, Plaintiff knew that Quintessa did not place Call Nos. 1 through 7. In fact, at least regarding Call Nos. 5, 6, and 7, Plaintiff knew the name of the company responsible for placing these calls but intentionally chose not to sue that company or include any mention of them in the Complaint because the company does not have deep pockets. Instead, Plaintiff fabricated the details of Call Nos. 1 through 7 in order to plead a TCPA claim against Quintessa.

Lastly, while Quintessa did place Call Nos. 8 through 12 and 14, these were follow-up communications that were only sent to Plaintiff after he had specifically inquired about and feigned interest in receiving Quintessa's services and disconnected his call with Quintessa. As such, specific personal jurisdiction cannot be exercised against Quintessa based on these communications for at

least three reasons. <u>First</u>, these communications do not constitute a violation of the TCPA because they fall squarely within the statute's established business relationship exception. <u>Second</u>, Quintessa did not purposefully avail itself of a Texas forum through these communications. <u>Third</u>, exercising personal jurisdiction based on these contacts would offend traditional notions of fair play and substantial justice.

Based on the foregoing, Quintessa respectfully requests that Plaintiff's Complaint (Dkt. #3) be dismissed with prejudice under Rule 12(b)(2).

## II.    FACTUAL BACKGROUND

The following facts are established by declaration.[1]

### A.    Plaintiff's Communications with Quintessa.

Quintessa's telephone system regularly maintains a call log and recordings of calls that were placed by Quintessa's intake department, received by Quintessa's intake department, or transferred to Quintessa's intake department.[2] According to Quintessa's call log, Quintessa did not place or receive and was not transferred any calls with Plaintiff prior to April 17, 2025.[3]

On April 17, 2025, at approximately 5:36 pm MST, Quintessa received a live transfer of a call with Plaintiff from Kareemiya Technologies & BPO d/b/a Auto Claims Solutions ("Kareemiya").[4] Plaintiff spoke to Quintessa's intake representative, Lauren, for approximately 8 minutes.[5] During this call, Plaintiff indicated that he was in a car accident and that he was interested in Quintessa assisting him in obtaining legal representation for his injuries, and agreed that Lauren could text him Quintessa's

---

[1] *See* <u>Ex. A</u> (Decl. of L. Mingee); <u>Ex. B</u> (Decl. of J. Cox); <u>Ex. C</u> (Decl. of N. Ahmad).

[2] *See* <u>Ex. A</u> (Decl. of L. Mingee) ¶ 9–10; <u>Ex. A-3</u> (Quintessa's Call Log).

[3] *See* <u>Ex. A-3</u> (Quintessa's Call Log).

[4] <u>Ex. A</u> (Decl. of L. Mingee) ¶ 18; <u>Ex. A-3</u> (Quintessa's Call Log); <u>Ex. C</u> (Decl. of N. Ahmad) ¶ 9.

[5] <u>Ex. A</u> (Decl. of L. Mingee) ¶ 18; <u>Ex. A-3</u> (Quintessa's Call Log).

callback number in case the line got disconnected.[6] The call was disconnected when Plaintiff hung up mid-sentence while discussing the accident and the damage to his car.[7]

Lauren attempted to reconnect with Plaintiff twice.[8] Plaintiff answered Lauren's 5:44 pm MST call (Call No. 8), but the call was again disconnected when Plaintiff hung up.[9] Lauren's 5:50 pm MST call (Call No. 9) went to Plaintiff's voicemail.[10] At 5:52 pm MST, Lauren placed a text to Plaintiff (Call No. 10) that said: "We just got connected. I'll try again in 5 mins."[11] Plaintiff then called Quintessa multiple times.[12] Plaintiff's first two calls to Quintessa were placed at 5:56 pm and 5:57 pm MST, respectively.[13] Plaintiff terminated both calls in queue after less than 30 seconds.[14]

Plaintiff then called Quintessa a third time at 5:57 pm MST.[15] Plaintiff was connected with another Quintessa representative named Bridgett.[16] After Plaintiff explained that his call with Lauren got disconnected, Plaintiff was transferred to another Quintessa intake representative, Laura, to resume the conversation.[17]

Plaintiff spoke to Laura for approximately 45 minutes.[18] Laura explained how the attorney retention process worked and that Quintessa had matched Plaintiff with the attorneys at Roberts Markland, LLP ("Roberts Markland").[19] After reconfirming the basic details of Plaintiff's accident and injuries, Plaintiff agreed that Laura could e-mail him the retainer for Roberts Markland.[20] Plaintiff and Laura walked through the retainer together, then Plaintiff indicated that he'd like more time to review

---

[6] Ex. A (Decl. of L. Mingee) ¶ 18.
[7] See Ex. A (Decl. of L. Mingee) ¶ 18; Ex. A-3 (Quintessa's Call Log).
[8] Ex. A (Decl. of L. Mingee) ¶ 19; Ex. A-3 (Quintessa's Call Log).
[9] Ex. A (Decl. of L. Mingee) ¶ 19; Ex. A-3 (Quintessa's Call Log).
[10] Ex. A (Decl. of L. Mingee) ¶ 19; Ex. A-3 (Quintessa's Call Log).
[11] Ex. A (Decl. of L. Mingee) ¶ 19; see also Ex. A-1 (Plaintiff's E-mail Demands) at 47.
[12] Ex. A (Decl. of L. Mingee) ¶ 29; Ex. A-3 (Quintessa's Call Log).
[13] Ex. A (Decl. of L. Mingee) ¶ 20; Ex. A-3 (Quintessa's Call Log).
[14] Ex. A (Decl. of L. Mingee) ¶ 20; Ex. A-3 (Quintessa's Call Log).
[15] Ex. A (Decl. of L. Mingee) ¶ 20; Ex. A-3 (Quintessa's Call Log).
[16] Ex. A (Decl. of L. Mingee) ¶ 20.
[17] Ex. A (Decl. of L. Mingee) ¶ 20.
[18] Ex. A (Decl. of L. Mingee) ¶ 21; Ex. A-3 (Quintessa's Call Log).
[19] Ex. A (Decl. of L. Mingee) ¶ 21.
[20] Ex. A (Decl. of L. Mingee) ¶ 21.

---

the retainer before signing.[21] Before the call ended, Plaintiff assured Laura multiple times that he would call Quintessa back the following day and indicated that he was open to having a conversation with Roberts Markland as well.[22]

On April 18, 2025, at 12:40 pm MST, Laura followed up with Plaintiff via a phone call.[23] After confirming who was calling, Plaintiff stated that he had reviewed everything, had a change of heart and did not want to proceed, and asked Laura to make sure that "they" don't call him.[24] Plaintiff's alleged calls 11, 12, and 14 are follow-up text messages from Quintessa following up on whether Plaintiff had signed the retainer.[25] These text messages also provided Plaintiff with Quintessa's callback number and indicated that Plaintiff could respond via text or phone call.[26]

## B.    Plaintiff Demands a $75,000 Settlement from Quintessa.

On April 17, 2025, Plaintiff sent an e-mail threatening to sue Quintessa, Sunset West Legal Group, Roberts Markland, and the Law Office of Tre Meredith, PLLC ("Tre Meredith") for alleged violations of the federal Telephone Consumer Protection Act (TCPA).[27] Plaintiff alleged that he had received 9 phone calls at his phone number ending in "5482" between March 24th and April 17th and that he did not consent to any of the calls and demanded a $75,000 settlement.[28] Plaintiff's e-mail included a chart showing his notes for each call.[29] The e-mail did not include a DNC request.[30] Quintessa placed Plaintiff on its internal do-not-call list the following day and its internal do-not-text list a few days later.[31]

---

[21] Ex. A (Decl. of L. Mingee) ¶ 21.
[22] Ex. A (Decl. of L. Mingee) ¶ 21.
[23] Ex. A (Decl. of L. Mingee) ¶ 22; Ex. A-3 (Quintessa's Call Log).
[24] Ex. A (Decl. of L. Mingee) ¶ 22.
[25] Ex. A (Decl. of L. Mingee) ¶ 23.
[26] Ex. A (Decl. of L. Mingee) ¶ 23.
[27] See Ex. A (Decl. of L. Mingee) ¶ 4; Ex. A-1 (Plaintiff's E-mail Demands).
[28] Ex. A-1 (Plaintiff's E-mail Demands) at 1–2.
[29] See Ex. A-1 (Plaintiff's E-mail Demands) at 1.
[30] See Ex. A-1; see also Ex. A (Decl. of L. Mingee) ¶ 25.
[31] Ex. A (Decl. of L. Mingee) ¶ 25.

---

**C.    Plaintiff Learns that Quintessa did not Place Call Nos. 1 through 7.**

On April 30, 2025, Quintessa's counsel sent Plaintiff a letter.[32] Among other things, Quintessa's counsel informed Plaintiff—and pointed to evidentiary support, including Plaintiff's own call recordings—that Quintessa did not place the alleged Call Nos. 1 through 6 and that the caller IDs Plaintiff had identified for those calls starting with "915" did not belong to Quintessa.[33] Quintessa's counsel then explained that Call No. 7 was placed by Kareemiya, then live-transferred by Kareemiya to Quintessa.[34] Lastly, the letter explained that while Quintessa did place Call Nos. 8 and 9, it did so only after Plaintiff unexpectedly hung up Call No. 7 during which Plaintiff had expressed interest in using Quintessa's services.[35]

As discussed in the letter, Kareemiya is a marketing company that Quintessa purchases leads from, but Quintessa does not own, control, or direct Kareemiya's marketing activities or telemarketing practices.[36] Quintessa's and Kareemiya's relationship is governed by a Master Services Agreement.[37] Under this agreement, Quintessa contractually required Kareemiya to comply with all applicable laws, including the TCPA.[38]

On May 5, 2025, Plaintiff sent Quintessa a draft complaint via email.[39] In Plaintiff's draft complaint, Plaintiff alleges that Kareemiya—*not* Quintessa—placed Call Nos. 1 through 7.[40]

From May 6 to May 12, 2025, Plaintiff and the managing director of Kareemiya, Naveed Ahmad, exchanged several e-mails.[41] Mr. Ahmad explained to Plaintiff that that Call No. 7 was placed

---

[32] *See* Ex. B (Decl. of J. Cox) ¶ 4; Ex. B-1 (Quintessa's April 30th Letter).
[33] *See* Ex. B-1 (Quintessa's April 30th Letter).
[34] *See* Ex. B-1 (Quintessa's April 30th Letter).
[35] *See* Ex. B-1 (Quintessa's April 30th Letter).
[36] *See* Ex. B-1 (Quintessa's April 30th Letter); *see also* Ex. A (Decl. of L. Mingee) ¶ 8; Ex. C (Decl. of N. Ahmad) ¶¶ 5–6, 10–12.
[37] *See* Ex. A (Decl. of L. Mingee) ¶¶ 7–8; Ex. C (Decl. of N. Ahmad) ¶ 5; Ex. A-2 (Kareemiya MSA).
[38] Ex. A-2 (Kareemiya MSA) §§ 6, 8; *see also* Ex. B-2 (Quintessa's April 30th Letter).
[39] Ex. B (Decl. of J. Cox) ¶ 6; Ex. B-3 (Plaintiff's Draft Complaint).
[40] Ex. B-3 (Plaintiff's Draft Complaint) ¶¶ 42, 44–46.
[41] *See* Ex. C (Decl. of N. Ahmad) ¶ 14; Ex. C-1 (E-mails Between Kareemiya and Plaintiff).

by Kareemiya and that Quintessa had no role in and was not responsible for the call.[42]

> *Please note that "QUINTESSA LLC", "ROBERTS MARKLAND LLP", "LAW OFFICE OF TRE MEREDITH, PLLC" had no involvement in the originating of this call from "Kareemiya Technologies & BPO".*
>
> *Please note that neither Quintessa nor any of its trade partners originated this call. I take full responsibility for the call being originated by Kareemiya Technologies & BPO.*
>
> *I am trying to resolve as I am the company who initiated the call at first place. and ultimately, I will be responsible for the payment.*

Mr. Ahmad then offered to settle with Plaintiff. Plaintiff declined and indicated that even if Kareemiya was responsible for the calls, he was not interested in settling with a company that did not have deep pockets.[43]

**D.     Plaintiff Files this Lawsuit Alleging that Quintessa Placed Call Nos. 1 through 12 and 14.**

On May 15, 2025, Plaintiff filed the present lawsuit against Quintessa, Roberts Markland, and Tre Meredith. *See* Dkt. #3. Compared to his draft complaint, Plaintiff changed the allegations in his filed Complaint to assert that Quintessa placed Call Nos. 1 through 12 and 14. *See* Dkt. #3 ¶¶ 41, 43-45, 48-50, 56, and 58.[44] Additionally, compared to his original call notes where "Car Accident Helpline" is nowhere to be found and Plaintiff never alleges that he provided a DNC request, Plaintiff changed the allegations in his filed Complaint to state that Call Nos. 1 through 7 were placed on behalf of "Car Accident Helpline" after learning that Car Accident Helpline was one of Quintessa's DBAs.[45]

---

[42] Ex. C-1 (E-mails Between Kareemiya and Plaintiff) at 7–9.

[43] *See* Ex. C-1 (E-mails Between Kareemiya and Plaintiff) at 4–8.

[44] *Compare., e.g.*: Ex. B-3 (Plaintiff's Draft Complaint) ¶ 42 ("Calls #1-4 . . . from Kareemiya") *with* Dkt. #3 ¶ 41 ("Calls #1-4 . . . from Quintessa"); Ex. B-3 (Plaintiff's Draft Complaint) ¶ 43 ("Call #5 . . . from Kareemiya . . . Kareemiya disconnected the call without explanation.") *with* Dkt. #3 ¶ 43 ("Call #5 . . . from Quintessa. . .The call was disconnected without explanation."); Ex. B-3 (Plaintiff's Draft Complaint) ¶ 45 ("Calls #6, Plaintiff received an additional solicitation call from Kareemiya . . . that was disconnected by Kareemiya without explanation.") *with* Dkt. #3 ¶ 44 ("Calls #6: Plaintiff received another solicitation call from Quintessa . . . Quintessa disconnected the call without explanation."; Ex. B-3 (Plaintiff's Draft Complaint) ¶ 46 ("Call #7, Plaintiff received another solicitation call from Kareemiya") *with* Dkt. #3 ¶ 45 ("Plaintiff received another solicitation call from Quintessa").

[45] *Compare* Ex. A-1 (Plaintiff's E-mail Demands) at 1 (noting, for Call Nos. 1 through 7, "Unauthorized solicitation call for accident injury claim") *with* Dkt. #3 ¶ 58 (noting, for Call Nos. 1 through 4, "Unauthorized solicitation – Car Accident Helpline – DNC Request provided," and for Call Nos. 5 through 7, "Unauthorized solicitation – Car Accident Helpline").

---

On June 16, 2025, Quintessa's counsel sent Plaintiff another letter.[46] This letter served as a notice of Quintessa's intent to pursue sanctions under Rule 11 of the Federal Rules of Civil Procedure based on a myriad of false and misleading statements that Plaintiff knowingly and intentionally included in the Complaint in order to fabricate a TCPA claims against Quintessa, Roberts Markland, and Tre Meredith.[47]

## III.   ARGUMENT

### A.   Legal Standard.

When presented with a motion challenging personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of establishing that the Court has personal jurisdiction over the defendant, the absence of which is grounds for dismissal. FED. R. CIV. P. 12(b)(2); *Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.,* 785 F.2d 1330, 1332 (5th Cir. 1986). Personal jurisdiction is governed by the Texas long-arm statute, which authorizes personal jurisdiction to the extent permitted by the Due Process clause of the U.S. Constitution. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). The Due Process Clause, in turn, requires that the defendant have "minimum contacts" with the jurisdiction and that the exercise of jurisdiction not violate traditional notions of fair play and substantial justice. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. For there to be minimum contacts, a defendant must have "purposefully availed" itself of the "benefits and protections of the forum state" such that it "should

---

[46] *See* Ex. B (Decl. of J. Cox) ¶ 5; Ex. B-2 (Quintessa's June 16th Letter).
[47] *See* Ex. B-2 (Quintessa's June 16th Letter).

reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

A defendant's minimum contacts with the forum state may support either specific or general personal jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Id.* Thus, specific personal jurisdiction exists where "a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008).

According to the Complaint, Plaintiff does not allege that this Court can assert general personal jurisdiction over Quintessa. See Dkt. #3 ¶ 6. Instead, Plaintiff contends that this Court can assert specific personal jurisdiction over Quintessa. As discussed below, Plaintiff has failed to meet his prima facie burden of establishing specific personal jurisdiction over Quintessa. Therefore, Plaintiff's claims against Quintessa should be dismissed with prejudice under Rule 12(b)(2).

**B.     Plaintiff's Jurisdictional Allegations are Insufficient to Support Specific Personal Jurisdiction over Quintessa.**

To determine the presence of specific personal jurisdiction, courts in the Fifth Circuit apply a three-step analysis that asks:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318 (5th Cir. 2020) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)); *see also Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309, 314

(5th Cir. 2025) (noting that all three steps must be satisfied). "If a defendant provides an affidavit or declaration setting forth facts that are only disputed by the plaintiff's barebone allegations, the defendant's facts are taken as true." *Smith v. Aegon USA, L.L.C.*, No. 24-60115, 2025 WL 1355137, at *2 (5th Cir. May 9, 2025) (citing *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024)); *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (holding that courts are not required to consider a plaintiff's conclusory jurisdictional allegations, even if uncontroverted).

Notably, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Helicopteros*, 472 F.3d at 274. In this instance, the Court's federal question jurisdiction arises out of Plaintiff's TCPA claim. Thus, Plaintiff must show that Quintessa's contacts with the forum state give rise to his TCPA claim. If the Court finds that it does not have specific jurisdiction over Quintessa for Plaintiff's TCPA claim, the Court can (and should) decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

Plaintiff relies on three allegations to support this Court's exercise of personal jurisdiction over Quintessa: (1) "Quintessa purposefully targets Texas when marketing debt relief services and products and regularly conducts business in this District including via telephone solicitations"; (2) "Quintessa called Plaintiff's El Paso-area phone number (915) to generate leads for their services"; and (3) "[t]hese calls to Texas injured Plaintiff in Texas, creating a causal link among Quintessa, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction." Dkt. #3 ¶ 7. None of these allegations are sufficient to satisfy Plaintiff's burden in this case. *See Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019) ("[I]t is the plaintiff's burden to establish that *in personam* jurisdiction exists.").

1. **Plaintiff's first jurisdictional allegation is factually and legally insufficient to support specific personal jurisdiction.**

Plaintiff first alleges that Quintessa "purposefully targets Texas when marketing debt relief services and products and regularly conducts business in this District including via telephone

solicitations." Dkt. #3 ¶ 7. To the contrary, Quintessa has never marketed "debt relief services and products" as any part of its business anywhere, let alone in Texas.[48] This appears to be an allegation that Plaintiff copied and pasted from other unrelated TCPA complaints that he previously filed in this District. *See, e.g.*, Dkt. #3 ¶ 5(a), *Cacho v. Amity One Debt Relief*, Case No. 3:24-CV-00160-KC (W.D. Tex. Mar. 16, 2024); Dkt. #3 ¶ 6(a), *Cacho v. JGW Debt Settlement, LLC*, Case No. 3:25-CV-00142-DB (W.D. Tex. Apr. 25, 2025). Because this allegation was (presumably) mistakenly included in Plaintiff's Complaint, it should not carry any weight in the Court's personal jurisdiction analysis.

Moreover, the Complaint is devoid of any facts to explain how Quintessa "regularly conducts business in this District." As a result, Plaintiff's first allegation is wholly conclusory and insufficient to establish personal jurisdiction. *See, e.g.*, *Osborne v. Beacon Hill Staffing Grp.*, No. 3:13-CV-3820-L, 2014 WL 1724479, at *3 (N.D. Tex. Apr. 30, 2014) (holding that the plaintiff failed to establish personal jurisdiction where he alleged that the defendant "conduct[s] business in the State of Texas," but did not allege any facts to show that the defendant "conducted any activities in Texas or intentionally targeted Texas residents"); *Casares v. Mile High Law Firm, LLC*, No. 4:11CV465, 2011 WL 13323986, at *2 (E.D. Tex. Oct. 21, 2011) (holding that the plaintiff failed to establish personal jurisdiction where the plaintiff's only jurisdictional allegation was: "Defendants conducts business in the state of Texas").

### 2.   Plaintiff's second jurisdictional allegation is legally insufficient to support specific personal jurisdiction and relies on factual allegations that are demonstrably false.

Regardless of if Quintessa generally conducts business in Texas, specific personal jurisdiction will only lie if the plaintiff's claims arise out of or relate to defendant's contacts with the forum state. *Libersat*, 978 F.3d at 318. The sole connection Plaintiff draws between his claims and Quintessa's alleged contacts with Texas is that Quintessa "called Plaintiff's El Paso-area phone number (915) to generate leads for their services." Dkt. #3 ¶ 7. More specifically, Plaintiff alleges that he received 9

---

[48] *See* Ex. A (Decl. of L. Mingee) ¶ 6.

calls (Call Nos. 1 through 9) and 5 text messages (Call Nos. 10 through 14). Dkt. #3 ¶ 58. Of those communications, Plaintiff alleges that Call Nos. 1 through 12 and 14 were placed by Quintessa, while Call No. 13 was placed by Roberts Markland.[49] Dkt. #3 ¶¶ 41, 43–45, 48–50, 56, and 58.

As discussed below, these allegations are not sufficient to establish specific personal jurisdiction over Quintessa at all, let alone for Plaintiff's TCPA claim, and are also controverted by multiple declarations and the evidence attached thereto. *See generally Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."). Accordingly, Plaintiff's claims should be dismissed with prejudice under Rule 12(b)(2).[50]

### i.    *Quintessa did not place Call Nos. 1 through 7 or 13.*

Plaintiff alleges that Call Nos. 1 through 7 were placed by Quintessa between March 24 and April 17, 2025, using various caller IDs starting in "915." Dkt. #3 ¶¶ 43–45, 58. These calls were not placed by Quintessa.[51] Quintessa does not operate any of the "915" phone numbers that Plaintiff identified as the caller IDs.[52] Moreover, according to Quintessa's call log with Plaintiff, Quintessa did not place, did not receive, and was not transferred any call involving Plaintiff prior to 5:36 pm MST on April 17th.[53]

Thus, Plaintiff's allegations that Quintessa placed Call Nos. 1 through 7 are directly refuted by Quintessa's declarations and evidence. *See Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, at *4 (D. Ariz. Feb. 11, 2021) (finding defendant's declaration asserting

---

[49] While Plaintiff very generally alleges that Quintessa was an agent of Roberts Markland, Plaintiff does not allege that Roberts Markland was acting as an agent of Quintessa when it placed Call No. 13. Thus, though the Complaint is unclear, it does not appear that Plaintiff is pursuing TCPA liability against Quintessa for Call No. 13.

[50] In the event the Court is not convinced by Quintessa's declarations and supporting evidence, Quintessa requests, in the alternative to dismissal, that the Court permit Quintessa to conduct jurisdictional discovery.

[51] *See* Ex. A (Decl. of L. Mingee) ¶¶ 11–17.

[52] *See* Ex. A (Decl. of L. Mingee) ¶ 11–17.

[53] *See* Ex. A-3 (Quintessa's Call Log). The call times listed in Plaintiff's Complaint are in MST. Quintessa's call log is recorded in PST.

---

**DEFENDANT QUINTESSA LLC'S 12(b)(2) MOTION TO DISMISS**                                    11

that it did not place or initiate any of the alleged calls to the plaintiff sufficient to controvert the jurisdictional allegations in the plaintiff's complaint). Because Quintessa's declarations and evidence set forth facts that can only be disputed by the Plaintiff's barebone allegations in the Complaint, the Court must presume that Quintessa's recitation of the facts is true. *Smith*, 2025 WL 1355137, at *2. But even setting Quintessa's evidence aside, the Court need look no further than Plaintiff's own draft complaint to reach the same conclusion.[54] Consequently, Call Nos. 1 through 7 cannot serve as a basis for exercising personal jurisdiction over Quintessa.

### ii. Call Nos. 8 through 12 and 14 were placed in response to Plaintiff's inquiry.

Call No. 7 was Quintessa's first interaction with Plaintiff.[55] During this call, Plaintiff made up an elaborate story in which he feigned interest in receiving Quintessa's services to assist him in retaining a lawyer in connection with a motor vehicle accident.[56] However, the call was suddenly terminated when Plaintiff hung up mid-sentence.[57] Quintessa's call representative then attempted to call Plaintiff back twice (Call Nos. 8 and 9).[58] Quintessa's representative also sent Plaintiff a text (Call No. 10), noting that their call had been disconnected and that she would call back in five minutes.[59] Minutes later, *Plaintiff* called Quintessa back three times.[60] On his third call, Plaintiff reconnected with a Quintessa intake representative and spoke to her for approximately 45 minutes, during which time he, again, explicitly expressed interest in Quintessa's services and indicated his intent to engage in follow-up communications with Quintessa.[61] Based on her discussion with Plaintiff, Quintessa's

---

[54] *See* Ex. B-3 (Plaintiff's Draft Complaint) ¶¶ 42, 44–46 (crediting Kareemiya with placing Call Nos. 1 through 7).

[55] As discussed above, Call No. 7 was not placed by Quintessa. *See* Ex. A (Decl. of L. Mingee) ¶¶ 17–18. It was placed by Kareemiya then live transferred by Kareemiya to Quintessa's intake department. *See* Ex. C (Decl. of N. Ahmed) ¶¶ 9–12; Ex. A (Decl. of L. Mingee) ¶¶ 17–18; *see also* Ex. C-2 (Kareemiya's Call History with Plaintiff); Ex. A-3 (Quintessa's Call Log).

[56] *See* Ex. B-3 (Quintessa's April 30th Letter); Ex. A (Decl. of L. Mingee) ¶ 18.

[57] Ex. A (Decl. of L. Mingee) ¶ 18; Ex. A-3 (Quintessa's Call Log).

[58] Ex. A (Decl. of L. Mingee) ¶ 19; Ex. A-3 (Quintessa's Call Log).

[59] Ex. A (Decl. of L. Mingee) ¶ 19; *see also* Ex. A-1 (Plaintiff's E-mail Demands) at 47.

[60] Ex. A (Decl. of L. Mingee) ¶ 20; Ex. A-3 (Quintessa's Call Log).

[61] Ex. A (Decl. of L. Mingee) ¶¶ 20–21; Ex. A-3 (Quintessa's Call Log).

intake representative followed up by phone on April 18th.[62] Plaintiff answered and indicated that he was no longer interested in Quintessa's services.[63] After this, Quintessa did not place any further calls to Plaintiff.[64] Plaintiff did receive three text messages from Quintessa on April 19, 20, and 22 related to the retainer Plaintiff discussed with Quintessa's intake representative during the call he placed to Quintessa on April 17th.[65] Plaintiff was placed on Quintessa's internal do-not-call and do-not-text lists mere days later.[66]

An entity "has minimum contacts with the forum State" if it "purposefully directed its activities toward the forum State or purposefully availed itself of the privileges of conducting activities there." *Helicopteros*, 472 F.3d at 271. While purposeful availment can result from a defendant initiating a communication to a plaintiff, the communication *itself* must constitute an intentional tort. *Salaiz v. Oscar Mgmt. Corp.*, No. EP-22-CV-00114-DCG, 2025 WL 1794447, at \*4 (W.D. Tex. June 25, 2025). For example, in *Wien Air Alaska, Inc. v. Brandt*, the Fifth Circuit held that a defendant's "letters, faxes, and phone calls to Texas" that allegedly "contained fraudulent misrepresentations and promises" created sufficient minimum contacts with Texas because the communications were independently tortious. 195 F.3d 208, 212–13 (5th Cir. 1999). In the TCPA context, courts have found that a defendant robocalling numbers at random will satisfy the purposeful availment requirement. *See Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 568 (S.D. Tex. 2021). They reason that if a defendant engages in the exact conduct the TCPA is designed to prevent (randomized robocalls), then the defendant has a reasonable expectation of being haled into court in whatever forum its call may land. *Id.*

---

[62] <u>Ex. A</u> (Decl. of L. Mingee) ¶ 22.
[63] <u>Ex. A</u> (Decl. of L. Mingee) ¶ 22.
[64] *See* <u>Ex. A-3</u> (Quintessa's Call Log).
[65] <u>Ex. A</u> (Decl. of L. Mingee) ¶ 23.
[66] <u>Ex. A</u> (Decl. of L. Mingee) ¶ 25.

Here, while Quintessa did place Call Nos. 8 through 12 and 14, Quintessa did not purposefully avail itself of a Texas forum through these communications. None of these communications violated the TCPA or were independently tortious. First, Quintessa never targeted any intentional wrongful act at Plaintiff and did not initiate any communication with Plaintiff using randomized robocalls like the defendants in *Wien Air Alaska* and *Thomas*. In fact, Quintessa did not initiate contact with Plaintiff at all. Rather, Quintessa responded to Plaintiff's continued inquiry into Quintessa's services.

Specifically regarding Call Nos. 8, 9, and 10, these communications were placed by Quintessa in an attempt to reconnect with Plaintiff after he suddenly terminated Call No. 7.[67] Plaintiff cannot rely on these calls to support personal jurisdiction over Quintessa because purposeful availment cannot be established by a defendant's receipt or return of a plaintiff's communication. *See Check, LLC v. First Bank of Delaware*, 774 F.3d 351 (6th Cir. 2014) (declining to exercise personal jurisdiction over a defendant for returning a plaintiff's call); *see also Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1286 (D. Kan. 2001) (declining to exercise personal jurisdiction in college recruitment context where the defendant's only contact with the forum state was "merely respond[ing] to [the] plaintiff's inquiries"); *Butera v. Sugarhouse Real Estate Grp., L.C.*, No. 2:25-CV-00014-DAK, 2025 WL 1798968, at *2–3 (D. Utah June 30, 2025) (dismissing TCPA claim under Rule 12(b)(6) because returning a call is not a "solicitation," and allowing a DNC plaintiff to manufacture liability by "mak[ing] return calls to businesses . . . that had perhaps made one unsolicited phone call, thereby eliciting a return call, and then alleging a violation of the TCPA" would conflict with the purpose of the TCPA).

Second, none of the communications Quintessa placed to Plaintiff independently violated the TCPA because they all fall under the TCPA's "established business relationship" exemption. *See* 47 U.S.C. § 227(b)(1)(C)(i). The TCPA prohibits unsolicited telemarketing and advertising

---

[67] Ex. A (Decl. of L. Mingee) ¶¶ 18–19.

communications **unless** "the unsolicited advertisement is from a sender with an established business relationship with the recipient." *Id.* An "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(6).

Applied here, the "established business relationship" exemption would constitute a complete bar to any TCPA liability against Quintessa for placing Call Nos. 8 through 12 and 14. Before Quintessa placed its first call to Plaintiff (Call No. 8), Plaintiff had already established a business relationship with Quintessa by voluntarily engaging in communication with Quintessa and explicitly expressing an interest in Quintessa's services during Call No. 7.[68] All communications following Call No. 7 were based on that established relationship. Notably, at no point prior to Quintessa's call on April 18th did Plaintiff express that he was not interested in Quintessa's services. Nor did Plaintiff ever directly request to be placed on Quintessa's internal DNC list (though Quintessa placed him on its DNC list regardless).[69] However, even if the Court were to take Plaintiff's allegation that he delivered a DNC request on April 18th as true, or if the Court were to construe plaintiff's request to Quintessa of "please make sure they don't call me" as a DNC request, Quintessa timely placed Plaintiff on its internal DNC list.[70] According to Plaintiff's own allegations, Quintessa's last communication with Plaintiff occurred on April 22nd, well within the 10 business day requirement under 47 C.F.R. § 64.1200(a)(10).[71]

---

[68] Ex. A (Decl. of L. Mingee) ¶¶ 18, 20; Ex. B-1 (Quintessa's April 30th Letter).
[69] *See* Ex. A (Decl. of L. Mingee) ¶ 25.
[70] *See* Ex. A (Decl. of L. Mingee) ¶ 25.
[71] *See* Dkt. #3 ¶ 58; *see also* Ex. A-3 (Quintessa's Call Log).

Therefore, because Quintessa's placement of Call Nos. 8 through 12 and 14 fall under the established business relationship exception, they do not support Plaintiff's TCPA claim—the sole basis for this Court's federal question jurisdiction. Moreover, Plaintiff does not establish that Quintessa purposefully availed itself of a Texas forum because these communications were neither independently tortious nor did they violate the TCPA. Consequently, Call Nos. 8 through 12 and 14 cannot serve as a basis for exercising personal jurisdiction over Quintessa.

### 3. Plaintiff's third jurisdictional allegation is legally insufficient to support specific personal jurisdiction.

Plaintiff's only remaining jurisdictional allegation is that Plaintiff alleges he was in El Paso when he received the calls. Dkt. #3 ¶ 7. However, "the plaintiff's *own contacts* with the forum [cannot] be used to demonstrate contacts by the defendant." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.")). Thus, because Plaintiff's residency in El Paso is not *Quintessa's* contact with Texas, it is no evidence that Quintessa purposefully availed itself of a Texas forum. *See, e.g.*, *Cunningham v. Upwell Health, LLC*, No. 4:19-cv-894-ALM-CAN, 2020 WL 4723175, at *5 (E.D. Tex. July 21, 2020), *report and recommendation adopted*, 2020 WL 4698322 (E.D. Tex. Aug. 13, 2020) (holding that the plaintiff's residency in Texas could not be used to demonstrate minimum contacts by the defendant for personal jurisdiction under the TCPA).

As a result, none of Plaintiff's jurisdictional allegations satisfy Plaintiff's *prima facie* burden of establishing personal jurisdiction over Quintessa. Accordingly, Plaintiff's claims against Quintessa should be dismissed under Rule 12(b)(2).

**C.      Exercising Specific Personal Jurisdiction Over Quintessa Would Offend Traditional Notions of Fair Play and Substantial Justice.**

Even if the Court finds that Plaintiff has pleaded sufficient allegations of minimum contacts to support the Court's exercise of personal jurisdiction over Quintessa, the Court should decline to exercise jurisdiction. Under the third step of the personal jurisdiction analysis, a court must decline to exercise personal jurisdiction if doing so would offend traditional notions of fair play and substantial justice. *Libersat*, 978 F.3d at 318. To determine whether such a compelling reason exists, courts consider five factors: (1) "the burden on the defendant"; (2) "the forum state's interest in adjudicating the dispute"; (3) the plaintiff's interest in obtaining  convenient and effective relief"; (4) "the judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 462, 477 (1985)).

Here, at least the last three factors weigh against exercising personal jurisdiction over Quintessa because Plaintiff knowingly and intentionally pleaded false jurisdictional allegations in order to fabricate a TPCA claim against Quintessa. While there are many examples that Quintessa can point to (and did in its June 16th Letter), the following are the most egregious:

- On April 17, 2025, when Plaintiff first contacted Quintessa, Plaintiff's call notes for Call Nos. 1 through 9 made no mention of "Car Accident Helpline."[72] Instead, they referenced "solicitation call for accident injury claim."[73] In Quintessa's April 30th Letter, Quintessa's counsel told Plaintiff that "Car Accident Helpline" was one of Quintessa's DBAs, but that Quintessa did not place Call Nos. 1 through 7.[74] In Plaintiff's own recordings of Call Nos. 6 and 7 and Kareemiya's recording of Call No. 5, each caller identified themselves as a representative of "Auto Claims Solutions."[75] None of the callers identified themselves as a representative of "Car Accident Helpline."[76] Yet in Plaintiff's Complaint, Plaintiff changed his call notes to allege that Call Nos. 1 through 7 were placed by "Car Accident Helpline." *See* Dkt. #3 ¶ 58.

---

[72] *See* Ex. A-1 at 1.
[73] *See* Ex. A-1 at 1.
[74] *See* Ex. B-1 (Quintessa's April 30th Letter).
[75] *See* Ex. B-1 (Quintessa's April 30th Letter); Ex. B-2 (Quintessa's June 16th Letter); Ex. C (Decl. of N. Ahmad) ¶¶ 7–9.
[76] *See* Ex. B-1 (Quintessa's April 30th Letter); Ex. C (Decl. of N. Ahmad) ¶¶ 7–9.

- In Quintessa's April 30th Letter, Quintessa informed Plaintiff that Kareemiya placed Call No. 7.[77] Kareemiya itself confirmed this to Plaintiff on May 6th.[78] In June, Quintessa provided call recordings to Plaintiff that again confirmed Kareemiya – not Quintessa – placed Call Nos. 5 through 7.[79] In these recordings, the call representatives clearly state that they are calling on behalf of "Auto Claims Solutions," Kareemiya's DBA.[80] Despite this, Plaintiff omitted Kareemiya entirely from the Complaint and failed to join Kareemiya as a defendant, a move that was clearly intentional so that Plaintiff's TCPA claims against Quintessa, Roberts Markland, and Tre Meredith would appear legitimate and thus prolong this litigation past the 12(b) stage.[81]

- During Call No. 7, before the call was transferred to Quintessa, Plaintiff orally consented to the transfer.[82] After Kareemiya transferred Call No. 7 to Quintessa, Plaintiff orally consented to Quintessa communicating with him via text message.[83] Yet, in the Complaint, Plaintiff alleges that all of the communications that form the basis of his claims were made without his written or verbal consent, and that he "did not provide his phone number to Defendants at any point prior to the receipt of the initial phone call." Dkt. #3 ¶ 60; *see also* Dkt. #3 ¶ 40.

- Plaintiff never sent Quintessa a written DNC request and never directly requested to be placed on Quintessa's internal DNC list.[84] The most Plaintiff requested was telling Quintessa's intake representative during Call No. 9 on April 18th to "make sure they don't call me."[85] Yet, in the Complaint, Plaintiff alleges that he sent a DNC request on March 24, 2025. Dkt. #3 ¶ 59.

- Plaintiff alleges that Quintessa disconnected Call Nos. 7 and 8. Dkt. #3 ¶¶ 46, 48. Quintessa's call log confirms that the calls were terminated when Plaintiff hung up.[86] Plaintiff likely did this to illicit call backs to manufacture and inflate his TCPA claims.

- Plaintiff did not answer Call No. 9.[87] After Call No. 9, Plaintiff placed 3 calls to Quintessa.[88] Plaintiff abandoned the first two calls in the queue.[89] On Plaintiff's third

---

[77] *See* Ex. B-1 (Quintessa's April 30th Letter).

[78] *See* Ex. C-1 (E-mails between Kareemiya and Plaintiff).

[79] *See* Ex. B-2 (Quintessa's June 16th Letter).

[80] *See* Ex. B-1 (Quintessa's April 30th Letter); *see* Ex. B-2 (Quintessa's June 16th Letter); Ex. C (Decl. of N. Ahmad) ¶¶ 7–9.

[81] On May 5, 2025, Plaintiff sent Quintessa a draft complaint. *See* Ex. B-3 (Plaintiff's Draft Complaint). In that draft complaint, Plaintiff more accurately pleaded Kareemiya's involvement in the calls. *See* Ex. B-3 (Plaintiff's Draft Complaint). After Kareemiya informed Plaintiff that Kareemiya was solely responsible for the calls and was not acting as an agent of Quintessa but did not have the funds to settle with Plaintiff for his $75,000 demand, Plaintiff deleted all allegations related to Kareemiya and filed the current live Complaint. *Compare* Dkt. #3 *with* Ex. B-3 (Plaintiff's Draft Complaint); *see also* Ex. C-1 (E-mails Between Kareemiya and Plaintiff) at 7–9.

[82] *See* Ex. B-1 (Quintessa's April 30th Letter); Ex. C (Decl. of N. Ahmad) ¶ 9.

[83] *See* Ex. B-1 (Quintessa's April 30th Letter); Ex. A (Decl. of L. Mingee) ¶ 18.

[84] Ex. A (Decl. of L. Mingee) ¶ 25.

[85] Ex. A (Decl. of L. Mingee) ¶ 22.

[86] *See* Ex. A-3 (Quintessa's Call Log).

[87] *See* Ex. A-3 (Quintessa's Call Log); Ex. A (Decl. of L. Mingee) ¶ 19.

[88] *See* Ex. A-3 (Quintessa's Call Log); Ex. A (Decl. of L. Mingee) ¶ 20.

[89] *See* Ex. A-3 (Quintessa's Call Log); Ex. A (Decl. of L. Mingee) ¶ 20.

---

attempt, Plaintiff spoke to Quintessa's intake call representative for approximately 45 minutes.[90] Rather than asking to be placed on a DNC list, Plaintiff continued his elaborate, fabricated story in which he feigned interest in retaining a lawyer to represent him in connection with a made-up motor vehicle accident for the purpose of inducing Quintessa to communicate with him in order to fabricate a TCPA claim.[91] Plaintiff omitted these details entirely from his Complaint.

- Plaintiff never asked Quintessa if it had an internal, written do-not-call policy (it does) or whether Quintessa's employees were trained on such a policy (they are).[92] However, in the Complaint, Plaintiff alleges that Quintessa "did not have a written do-not call policy" and "did not train their employees and/or agents on the existence and use of any do-not-call list." Dkt. #3 ¶¶ 62–63.

It would be inequitable under the fair play and substantial justice factor for a defendant to be subject to personal jurisdiction based on jurisdictional allegations that were indisputably and intentionally fabricated by the plaintiff, as is the case here. Should the Court reach this third step, the Court should find that exercising personal jurisdiction over Quintessa would violate traditional notions of fair play and substantial justice.

## D.    Dismissal of Plaintiff's TCPA Claim Requires Dismissal of Plaintiff's Pendent State Law Claims.

"When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Because Plaintiff's TCPA claim against Quintessa should be dismissed under Rule 12(b)(2), the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See, e.g.*, *Cunningham v. Radius Glob. Sols., LLC*, No. 4:20-CV-00294, 2021 WL 2258743 (E.D. Tex. June 3, 2021) (declining to exercise supplemental

---

[90] *See* Ex. A-3 (Quintessa's Call Log); Ex. A (Decl. of L. Mingee) ¶ 21.
[91] *See* Ex. B-1 (Quintessa's April 30th Letter); Ex. B-2 (Quintessa's June 16th Letter).
[92] Ex. A (Decl. of L. Mingee) ¶ 26.

jurisdiction to keep plaintiff's state law claim because the court dismissed the federal TCPA claim). Accordingly, Plaintiff's state law claims should be dismissed as well.

## IV.    CONCLUSION

Plaintiff has failed to carry his burden of establishing a *prima facie* case of personal jurisdiction over Quintessa. Accordingly, Quintessa respectfully requests that the Court dismiss all of Plaintiff's claims against Quintessa with prejudice under Rule 12(b)(2) for lack of personal jurisdiction.

Dated: July 18, 2025

*/s/ Jessica D. Cox*
Christopher J. Schwegmann
Texas Bar No. 24051315
Federal ID: 609501
cschwegmann@lynnllp.com
Jessica D. Cox
Texas Bar No. 24114769
Federal ID: 3888866
jcox@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR DEFENDANT QUINTESSA LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2025, a true and correct copy of the foregoing was served via CM/ECF upon all parties and counsel of record.

*/s/ Jessica D. Cox*
Jessica Cox

---

**DEFENDANT QUINTESSA LLC'S 12(b)(2) MOTION TO DISMISS**                    21