# EXHIBIT B-1

# LYNN PINKER HURST SCHWEGMANN

CHRIS SCHWEGMANN
*Partner*

D 214 981 3835
F 214 981 3839
cjs@lynnllp.com

Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
**lynnllp.com**

April 30, 2025

<u>*Via Email*</u>
Joshua Cacho
jcacho1848@gmail.com

Re:    *Alleged TCPA Violations Against Quintessa LLC*

Dear Mr. Cacho:

This correspondence is in reference to the e-mail demands you have sent regarding Quintessa LLC ("Quintessa"), alleging violations of the Telephone Consumer Protection Act (TCPA). As explained herein, your allegations are verifiably false, and you have no TCPA claim against Quintessa.

**A.    <u>You consented to and solicited a call from Quintessa's marketing affiliate on April 17, 2025.</u>**

You allege that you received 9 phone calls at your phone number, 915-200-5482, between March 24th and April 17th. Your notes for each call are included below.

- 3/24/2025, 12:37pm from 915-231-6312 – "Unauthorized solicitations call for accident injury claim – hung up"
- 3/25/2025, 1:37pm from 915-231-6369 – "Unauthorized solicitations call for accident injury claim – hung up"
- 4/2/2025, 5:47pm from 915-231-6829 – "Unauthorized solicitations call for accident injury claim – hung up"
- 4/16/2025, 10:48am from 915-213-6103 - "Unauthorized solicitations call for accident injury claim – hung up"
- 4/17/2025, 5:17pm from 915-231-6507 – "Unauthorized solicitation call for accident injury claim - engaged agent to find out who was responsible for these calls - line disconnected"
- 4/17/2025, 5:24pm from 915-231-6507 – "Unauthorized solicitation call for accident injury claim - engaged agent to find out who was responsible for these calls - line disconnected"

- 4/17/2025, 5:34pm MST (6:34pm CST) from 915-821-2659 – "Unauthorized solicitation call for accident injury claim - engaged agent to find out who was responsible for these calls - line disconnected"
- 4/17/2025, 5:44pm MST (6:44pm CST) from 817-642-9705 – "Unauthorized solicitation call for accident injury claim - line disconnected"
- 4/17/2025, 5:50pm MST (6:50pm CST) from 817-642-9705 – "Unauthorized solicitation call for accident injury claim VM"

Joshua Cacho
April 30, 2025
Page 2 of 7

As an initial matter, Quintessa did not place any of the calls listed above from any 915 number. None of the numbers starting with "915-213" belong to Quintessa.

The only calls listed above that have any connection whatsoever to Quintessa are those that occurred at 6:34pm, 6:44pm, and 6:50pm CST on April 17th. As you know, Quintessa did not place the call that you received at 6:34pm CST on April 17th. You provided a call recording titled "R-00083_2504150048," which appears to be a recording of the 6:34pm call. Based on this recording, you spoke to an unnamed individual who transferred you to another individual named "David." David identified himself as a representative of Auto Claims Solutions.[1] Auto Claims Solutions is a d/b/a of Kareemiya Technologies & BPO ("Kareemiya"). After speaking with Kareemiya's representative, Kareemiya live transferred the call to Quintessa. You spoke to Quintessa's intake representative, Lauren, for approximately 8 minutes before the call dropped. Lauren called you back at 6:44pm CST and 6:50pm CST.

Kareemiya is a marketing company that Quintessa purchases leads from, but Quintessa does not own, control, or direct Kareemiya's marketing activities or telemarketing practices. Further, Quintessa contractually requires its marketing affiliates and third-party lead providers, such as Kareemiya, to comply with all applicable laws, including the TCPA. Again, Quintessa does not (and did not) control the means or methods by which Kareemiya conducts its marketing. Quintessa also has no involvement in, or knowledge of, the telemarketing activities conducted by any third parties that may work with Kareemiya. Therefore, Quintessa cannot be held vicariously liable under the TCPA for any actions taken by Kareemiya or any other third-party involved in the call before it was transferred to Quintessa.

In sum, neither Quintessa nor Kareemiya called you on March 24th, March 25th, April 2nd, April 16th, or prior to 6:34pm CST on April 17th. The calls you received at 6:34pm, 6:44pm, and 6:50pm CST on April 17th occurred because you provided your contact information through the contact request form on mvaassistance.com, consented to being contacted, and requested to be contacted in response to your submission. Moreover, Quintessa's calls at 6:44pm and 6:50pm were callbacks because the line disconnected during your inquiry into Quintessa's services. Thus, these two calls are not actionable because they fall under the TCPA Established Business Relationship exception. Thus, these communications did not violate the TCPA. Regardless, Quintessa is not liable for the referenced calls because Quintessa does not control Kareemiya's marketing methods. We trust that this resolves your complaints against Quintessa.

**B.**    **You have no legal basis to pursue a TCPA claim against Quintessa.**

Even if the above facts were not fatal to your alleged TCPA claim (they are), you have no legal basis to pursue a TCPA claim against Quintessa.

---

[1] In the beginning of the call recording, the first individual stated that you called him. *See* R-00083_2504150048 at 0:00:01-2 (You: "Sir – who's this?" Individual: "Yeah - - I'm sorry you called [unintelligible] . . . So you told me . . . "

Joshua Cacho
April 30, 2025
Page 3 of 7

- **First**, as discussed above, you previously provided express written consent to be contacted at your phone number by mvaassistance.com and its marketing partners, including Quintessa and Kareemiya.

- **Second**, before you were transferred by Kareemiya to Quintessa, you specifically agreed to be transferred to Quintessa. You then conducted a call with Quintessa in which you inquired about and explicitly expressed an interest in receiving information about and using Quintessa's services. Thus, your communications during the 6:34pm call on April 17th created an established business relationship with Quintessa. As a result, the calls placed at 6:44pm and 6:50pm on April 17th were permissible under the TCPA. *See Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *5 (S.D. Ohio Sept. 30, 2019) (dismissing plaintiff's TCPA claims with respect to certain calls where the plaintiff feigned interest in defendant's products and services and, by doing so, created an existing business relationship with the defendant such that further communications from the defendant did not violate the TCPA).

- **Third**, you consented to and solicited the 6:34pm call. Prior to speaking with Kareemiya's representative, David, you filled out and submitted an online contact request form, in which you consented to being contacted at your phone number and requested to be contacted by mvaassistance.com and its marketing partners. The marketing partners link provided on the contact request form listed not only Quintessa, but also Quintessa Marketing and Quintessa's DBA Car Accident Helpline, as well as Kareemiya DBA Auto Claims Solutions. A Trusted Form certificate and a recording of you filling out the contact request form on mvaassistance.com and requesting to be contacted at the phone number "915-200-5482" are viewable at the link below:

  https://cert.trustedform.com/15673a3c1912749008ce48178ca49a524b530c7f?shared_token=U2xBdmRqaHVNRVpoWjJKSGVrTllWMmx5YUdJcmNHaHFNRGhPUkRObmJWaGhORk4yUzBweU1TdGpTMEZzVWxoMVVsaHpkakJaV210emMxSTVOSHAzVkhncmNHMHpTM2xFVjJNdlVUWm1SR2hIYUdWdFJFSkNTMU5NUzFsSWRUZG1NbHB5VENzeU9EaGxkMWs5TFMxRGNXaEdXR2w1VTNoQ09YSnplbll5VUVWTllsSm5QVDA9LS1mMzI4N2Q1NzE5NGYzODc0YWJkMjU4NWE4NTdjMDkzM2IzMDgxMDdk

  You confirmed your submission of this form during the 6:34pm call with Kareemiya, per the "R-00083_2504150048" recording you provided:

  0:06:00   [Kareemiya call agent]: Thank you so much for holding. You're on a recorded line. This is Derek from Auto Claims Solutions. *We received your online inquiry that you are needing to speak to an accident attorney regarding your auto accident. Is that correct?*

  0:06:13   [You]: *Yes, sir.*

Joshua Cacho
April 30, 2025
Page 4 of 7

The Trusted Form certificate also confirms that the IP address associated with the device that was used to submit the contact request form was based in El Paso, Texas—which matches the area code of your phone number—and that you submitted the form at 6:28pm CST. Therefore, Kareemiya's call with you at 6:34pm CST on April 17th, which was eventually transferred to Quintessa, occurred only ***after*** you submitted the contact request form on mvaassistance.com. The submission of the contact request form is also what ultimately led to the calls you received from Quintessa at 6:44pm and 6:50pm on April 17th. This evidence showing that you consented to and solicited the calls is dispositive of any TCPA claims against Quintessa.

Additionally, in your call with Quintessa, rather than immediately asking to be placed on any DNC list, you fabricated an elaborate story in which you feigned interest in retaining a lawyer to represent you in connection with a motor vehicle accident. For example, you told Quintessa's intake representative that you were in an accident on April 2nd in El Paso, that the El Paso Police Department responded to the scene, and that the defendant was placed at fault. The Texas Department of Transportation has no record of any crash reports from a crash involving you in El Paso on April 2nd. It is apparent that you created this story for the purpose of inducing Quintessa to communicate with you in order to fabricate a TCPA claim.

Your communications and representations to Quintessa constitute common law fraud and fraud by nondisclosure. Should you proceed with filing a lawsuit against Quintessa, Quintessa will pursue counterclaims against you for fraud and seek punitive damages, as well as all other remedies available to it. As you are likely aware, in recent years, numerous district courts in the Fifth Circuit have allowed defendants to pursue similar counterclaims against serial TCPA plaintiffs, such as yourself, who knowingly induced defendants to place calls or texts in an effort to manufacture TCPA claims. *See, e.g., Franklin v. Upland Software, Inc.*, No. 1-18-CV-00236-LY, 2019 WL 433650, at *3 (W.D. Tex. Feb. 1, 2019), *report and recommendation adopted*, No. 1:18-CV-236-LY, 2019 WL 2745748 (W.D. Tex. Mar. 12, 2019) (allowing defendant to proceed with claims of common law fraud and fraud by nondisclosure against serial TCPA plaintiff); *Cunningham v. USA Auto Prot., LLC*, No. 4:20-CV-142-RWS-KPJ, 2021 WL 434243, at *4 (E.D. Tex. Jan. 8, 2021), *report and recommendation adopted*, No. 420CV00142RWSKPJ, 2021 WL 425100 (E.D. Tex. Feb. 8, 2021) (same); *Nelson Estrada, et. al., v. Aragon Advertising, LLC & Python Leads, LLC*, No. 4:23-CV-3407, 2024 WL 5059166, at *7 (S.D. Tex. Dec. 10, 2024) (allowing defendant to proceed with fraud counterclaims against serial TCPA plaintiff where defendant alleged plaintiff pretended to be interested in defendant's services in order to drive up the call count to extract a higher payout for his manufactured TCPA claims).

As you know from your pending lawsuit against USHealth Advisors, LLC and USHealth Group, Inc., which Quintessa is closely monitoring, courts will allow a defendant to pursue discovery into whether the plaintiff is a professional TCPA plaintiff who has regularly fabricated TCPA claims for monetary gain. If you file a lawsuit against Quintessa for any alleged TCPA violations, Quintessa will seek discovery to prove that your claim is frivolous, that you are a professional TCPA plaintiff, that you use 915-200-5482 and other cell phone numbers for a business purpose, and that you have profited from fabricating TCPA claims against other defendants, including:

Joshua Cacho
April 30, 2025
Page 5 of 7

- Identification of all telephone numbers and accounts, and service providers for those numbers and accounts, used by you to make or receive telephone calls.
- All documents, notes, or logs you use to track any telephone calls or text messages you receive, including calls or text messages that you believe violated any law.
- Copies of all transcripts of depositions, in-court testimony, and discovery responses you have provided over the past 10 years.
- Documents related to any assertion by a company or defendant that you gave consent to receive a call or text message that you claimed was in violation of a law.
- Identification of the IP address for any electronic devices you use to access the Internet.
- Identification of all e-mail addresses you use.
- All social media posts, blog posts, and other online posts or comments you have made related to the TCPA.
- Communications you have sent or received concerning joining in any lawsuit alleging a violation of the TCPA.
- All demand letters or emails you have sent alleging a violation of the TCPA.
- Documents sufficient to identify any and all compensation, money, or income that you have received related to a claimed violation of the TCPA, including your Federal tax filings and any W-9 forms.
- Documents showing your total income for any year in which you received compensation, money, or income related to a claimed violation of the TCPA.
- Any documents, informational material, or research you have performed or possess related to how recipients of telemarketing calls can seek relief, including under the TCPA.
- Any data or information related to any applications you use to block or keep track of telephone solicitations, telemarketers, or robocalls, or that you use for call forwarding.
- Any documents sufficient to identify when you used 915-200-5482 for any business purpose.
- All billing statements and proof of payment for any telephone number you regularly use.
- Documents related to any instances in which you were convicted of a crime involving a dishonest or false statement in the last 10 years.
- A Google Takeout export of your Google search history, your Google Chrome browser history, your Google My Business data, your Google My Activity data, your Google saved data, and your Google voice data.

Quintessa will seek all of this discovery and more should you proceed with filing your threatened lawsuit. Quintessa will also seek sanctions against you since you consented to, solicited, and encouraged any communications from Quintessa using a fabricated personal injury story.

Lastly, in the e-mail you sent to Christopher Meier on April 17th at 9:22pm CST, you threatened to sue not only Quintessa, but also Sunset West Legal Group, Roberts Markland LLP, and the Law Office of Tre Meredith. There is **_no connection_** between Sunset West Legal Group or the Law Office of Tre Meredith and the 9 calls alleged in your email. You have also not alleged any facts,

Joshua Cacho
April 30, 2025
Page 6 of 7

nor do any exist, that would support any claim against Sunset West Legal Group or the Law Office of Tre Meredith. Moreover, although Quintessa sent you a contract for Roberts Markland, you have not alleged any facts to support a claim against Roberts Markland. Nor could Roberts Markland be held vicariously liable for any of these calls because Roberts Markland does not control or direct the way Quintessa or Kareemiya conduct their marketing. Any allegation that Sunset West Legal Group, Law Office of Tre Meredith, or Roberts Markland have any responsibility for the alleged calls would be unequivocally false. If you pursue a baseless claim against these entities, Quintessa will seek Rule 11 sanctions against you.

**C.      Instructions to Retain Records**

Please accept this letter as formal notice of your duty to retain all records, communications, and/or documentation related to all communications you have had with Quintessa, about Quintessa, or related to the alleged calls until this matter is resolved.

In particular, you must retain all information, documentation, and communications connected with or related to the calls alleged in your demand e-mails, and documents and communications generally related to other TCPA claims you have alleged against other companies, including the following:

1. All communications, documentation, and other information in your possession related to the calls alleged in your demand e-mails.
2. All communications, documentation, and other information in your possession concerning mvaassistance.com, Quintessa, Kareemiya, Roberts Markland LLP, and the facts set forth in your demand e-mails.
3. Documents that reflect your cellular telephone GPS data, also known as cell site data, for 915-200-5482 on the date of each and every call alleged in your demand e-mails.
4. Phone data, call records, and call history for 915-200-5482 on the date of each and every call alleged in your demand e-mails.
5. Search and browser history for April 2025.
6. Personal notes, logs, and journals related to or mentioning the calls alleged in your demand e-mails.
7. All documents, communications, and information identified in the bullet points on Page 5 of this letter.

Your obligation to preserve paper files and ESI extends to, among other things, all paper files as well as other data generated by and/or stored on your computer systems and storage media (e.g., hard disks, floppy disks, backup tapes, servers, and cloud storage). This includes, but is not limited to, e-mail and other electronic communications; word processing documents; instant messages; texts; spreadsheets; databases; calendars; telephone logs; contact manager information; Internet usage files; offline storage or information stored on removable media; information contained on laptops or other portable devices; and network access information.

Further, as you may be aware, electronic documents and the storage media on which they reside may contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even if a paper copy exists, we may be required to produce all documents in

Joshua Cacho
April 30, 2025
Page 7 of 7

their native electronic form along with metadata or information about those documents contained in the media.

An obligation to preserve documents and other data for discovery related to this matter may arise independently from any motion or order that could be sought in this matter. Due to its format, ESI can easily be deleted, modified, or corrupted inadvertently. Accordingly, you must take reasonable steps to preserve information, including but not limited to, any ESI, until the final resolution of this dispute. This may include, but is not limited to, an obligation to discontinue data destruction and backup tape recycling policies; preserve and not dispose of relevant hardware unless an exact replica of the file (a mirror image) is made; preserve and not destroy passwords, decryption procedures (and accompanying software), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software; and maintain all other pertinent information and tools needed to access, review and reconstruct all requested or potentially relevant ESI.

*    *    *

The letter is sent without prejudice to Quintessa's rights and remedies, all of which are expressly reserved. If you have any questions, please let me know.

Sincerely,

Christopher J. Schwegmann