# EXHIBIT B-2

# LYNN PINKER HURST SCHWEGMANN

CHRIS SCHWEGMANN
*Partner*

D 214 981 3835
F 214 981 3839
cjs@lynnllp.com

Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
**lynnllp.com**

June 16, 2025

*Via Email & CMRRR#:*
Joshua Cacho
6773 Isla Del Rey Drive
El Paso, Texas 79912
jcacho1848@gmail.com

Re:    Civil Action No. 3:25-cv-00169-KC; *Joshua Cacho v. Roberts Markland LLP, et al.*; in the United States District Court for the Western District of Texas – El Paso Division.

Mr. Cacho:

On May 15, 2025, you filed a Complaint in the above lawsuit based on facts that you know to be false. If you do not withdraw your baseless claims within twenty-one days of this letter, Quintessa LLC ("Quintessa") will move for sanctions against you and for its attorneys' fees pursuant to Rule 11 of the Federal Rules of Civil Procedure.

**A.    Before You Filed Your Complaint, You Knew Kareemiya Placed Call No. 7, and that Quintessa, Roberts Markland, and Tre Meredith Were Not Responsible for Any of the Calls You Allegedly Received.**

On April 17th, you sent an email threatening to sue Quintessa, Sunset West Legal Group, Roberts Markland LLP ("Roberts Markland"), and the Law Office of Tre Meredith, PLLC ("Tre Meredith") for alleged violations of the federal Telephone Consumer Protection Act (TCPA). You alleged that you received 9 phone calls at your phone number, 915-200-5482, between March 24th and April 17th:

| Alleged Calls | Date | Time | Caller ID |
|---|---|---|---|
| No. 1 | 3/24/2025 | 12:37 pm | from 915-231-6312 |
| No. 2 | 3/25/2025 | 1:37 pm | from 915-231-6369 |
| No. 3 | 4/02/2025 | 5:47 pm | from 915-231-6829 |
| No. 4 | 4/16/2025 | 10:48 am | from 915-213-6103 |
| No. 5 | 4/17/2025 | 5:17 pm | from 915-231-6507 |
| No. 6 | 4/17/2025 | 5:24 pm | from 915-231-6507 |
| No. 7 | 4/17/2025 | 5:34 pm MST (6:34 pm CST) | from 915-821-2659 |
| No. 8 | 4/17/2025 | 5:44 pm MST (6:44 pm CST) | from 817-642-9705 |
| No. 9 | 4/17/2025 | 5:50 pm MST (6:50 pm CST) | from 817-642-9705 |

You stated that you did not consent to any of the calls and demanded a $75,000 settlement.

Joshua Cacho
June 16, 2025
Page 2 of 6

We sent you a letter on April 30th. That letter informed you—**and** pointed to evidentiary support, including **your own call recordings**—that:

- None of the numbers starting with "915-213" belong to Quintessa, and there is no connection between call Nos. 1 through 6 and Quintessa;
- You provided your contact information through a contact request form on mvaassistance.com, provided express written consent to being contacted at your phone number, and requested to being contacted in response to your submission;
- Call No. 7 was placed by Kareemiya Technologies & BPO d/b/a Auto Claims Solutions ("Kareemiya");
- On the call with Kareemiya, the call representative identified himself as a representative of "Auto Claims Solutions" (Kareemiya's DBA);
- On the call with Kareemiya, you made up an elaborate story in which you feigned interest in retaining a lawyer to represent you in connection with a motor vehicle accident;
- You expressly consented to being transferred to Quintessa;
- Kareemiya then live transferred Call No. 7 to Quintessa;
- After being transferred to Quintessa, you inquired about and explicitly expressed an interest in receiving information about and using Quintessa's services; and,
- After the call disconnected, Quintessa's call representative attempted to call you back twice (Call Nos. 8 & 9).

These facts are separately confirmed by your call recordings that you sent to us prior to filing your Complaint. For example, you provided a call recording titled "R-00083_2504150048," which appears to be a recording of Call No. 6. At 0:06:00, the caller identifies himself as "Derek from Auto Claims Solutions." As both Quintessa and Kareemiya have told you, "Auto Claims Solutions" is Kareemiya's DBA. Derek then states that he "received your online inquiry that you are needing to speak to an accident attorney regarding your auto accident," and asks if that is correct. *See* Call No. 6 at 0:06:02–0:06:08. You confirm: "Yes, sir." *Id.* at 0:06:09. After Call No. 6 disconnects, Derek places Call No. 7, which you provided a recording of titled, "R-00083_2504150048." After briefly speaking again with Derek, you expressly consent to being transferred to Quintessa. *See* Call No. 7 at 0:01:18–0:01:25 (Derek: "Do I have your permission to transfer you to a car accident agent, even if your number is registered on any state or federal do-not-call lists? Will that be yes?" You: "Yes.").

Unsurprisingly, Kareemiya's call recordings, which will be provided to you with this letter, are entirely consistent with your call recordings and Quintessa's call recordings.[1] In the recording titled "20250417-191749_9152005482," which appears to be a recording of Call No. 5, the caller, "Daniel," identifies himself as a representative of Auto Claims Solutions **twice** within the first 15 seconds of the call. *See* Call No. 5 at 0:00:00–0:00:15. After the call disconnects, Daniel calls you back (Call No. 6) and eventually transfers you to Derek. Kareemiya's recordings of Call No. 6, "20250417-192442_9152005482," and Call No. 7, "20250417-193416_9152005482," are identical your recordings of Call Nos. 6 and 7, and Quintessa's recording of Call No. 7 after it was transferred to Quintessa by

---

[1] A copy of Quintessa's call recordings will also be provided to you with this letter. Please note that Quintessa's call recordings and Kareemiya's call recordings are designated confidential and should be treated as such and should not be distributed or shared to any third-parties or used for any purpose other than this lawsuit.

Joshua Cacho
June 16, 2025
Page 3 of 6

Kareemiya. Just like your recordings and Quintessa's recordings, Kareemiya's recordings show that the callers identify themselves as representatives of Kareemiya, and that Quintessa did not place any of the calls.

Our April 30th letter also informed you that while Kareemiya is a marketing company that Quintessa purchases leads from, Quintessa does not own, control, or direct Kareemiya's marketing activities or telemarketing practices. Further, Quintessa contractually requires its marketing affiliates and third-party lead providers, such as Kareemiya, to comply with all applicable laws, including the TCPA.

Finally, the April 30th letter informed you that there was no connection between Sunset West Legal Group or the Law Office of Tre Meredith and the 9 calls you allegedly received. And while Quintessa did send you a contract for Roberts Markland, you had not alleged any facts to support a claim against Roberts Markland. Nor could Roberts Markland be held vicariously liable for any of the alleged calls because Roberts Markland does not control or direct the way Quintessa or Kareemiya conduct their marketing. Thus, we warned you that any allegation that Sunset West Legal Group, Tre Meredith, or Roberts Markland have any responsibility for the alleged calls would be unequivocally false, and that Quintessa would seek Rule 11 sanctions against you if you pursued a baseless claim against these entities.

After you received the April 30th letter, Naveed Ahmad, the owner of Kareemiya, sent you a series of emails. On May 6th, Mr. Ahmad confirmed that Call No. 7 was placed by Kareemiya – *not* Quintessa:

> *Please note that "QUINTESSA LLC", "ROBERTS MARKLAND LLP", "LAW OFFICE OF TRE MEREDITH, PLLC" had no involvement in the originating of this call from "Kareemiya Technologies & BPO".*

Mr. Ahmad then offered a monetary settlement, which you rejected. Later that day, Mr. Ahmad again confirmed that Quintessa did not place Call No. 7 and that only Kareemiya was responsible:

> *Please note that neither Quintessa nor any of its trade partners originated this call. I take full responsibility for the call being originated by Kareemiya Technologies & BPO.*

The next day, Mr. Ahmad confirmed – for a third time – that Kareemiya was responsible for placing the call:

> *I am trying to resolve as I am the company who initiated the call at first place. and ultimately, I will be responsible for the payment.*

At no point during these email communications did you dispute that Kareemiya was the entity that placed the call. In fact, you only responded that because Kareemiya could not afford to pay your $75,000 demand, you had no interest in negotiating with them.

Joshua Cacho
June 16, 2025
Page 4 of 6

## B.    Your Complaint Relies on Intentionally False Allegations.

As made clear by the above, before you filed this lawsuit, you knew from the call recordings that Call Nos. 1 through 6 were not placed by Quintessa and did not involve Quintessa. You knew that the callers that placed Call Nos. 1 through 6 did not identify themselves as calling on behalf of "Car Accident Helpline" (Quintessa's DBA). You also knew that Kareemiya was the entity responsible for placing Call No. 7. You knew that Quintessa, Roberts Markland, and Tre Meredith had no role in placing Call No. 7, or the 6 prior calls that you allegedly received. You knew that Quintessa only placed Call Nos. 8 and 9 because Call No. 7 was disconnected after it was transferred to Quintessa by Kareemiya, and after you inquired into learning more about Quintessa's services. In short, all 3 sets of call recordings—yours, Quintessa's, and Kareemiya's—run contrary to the allegations in your Complaint.

Despite knowing all of this, you did not sue Kareemiya or even mention Kareemiya at all in the Complaint. Instead, even though you knew Kareemiya placed call No. 7 and was responsible for transferring the call to Quintessa, you pleaded in your Complaint:

- ¶ 7: "Quintessa called Plaintiff's El Paso-area phone number (915) to generate leads for their services."
- ¶ 41: "[B]etween March 24, 2025, and April 16, 2025, Plaintiff received at least four (4) solicitation calls from Quintessa soliciting car accident injury relief services."
- ¶ 43: "Plaintiffs received a call to his personal cell phone ending in 5482 on April 17, 2025, at 5:17 PM from Quintessa, displaying the Caller ID of 915-231-6507. Plaintiff . . . was greeted by a Quintessa representative, claiming to be calling from 'Car Accident Helpline.'"
- ¶ 44: "Plaintiff received another solicitation call from Quintessa on April 17, 2025. Quintessa disconnected the call without explanation."
- ¶¶ 45-47: Plaintiff received another solicitation call from Quintessa. Plaintiff engaged the caller to confirm the identity of the responsible party for the calls. Plaintiff was connected to 'Lauren' from Quintessa. Lauren disconnected the call before providing any identifying information about any of the Defendants. Lauren did not disclose that she was a Quintessa representative."
- ¶ 48: "[O]n April 17, 2025, at 5:44 PM, Plaintiff received a solicitation call from Lauren from Quintessa . . . Lauren disconnected the call before providing any identifying information."
- ¶ 49: "[O]n April 17, 2025, at 5:50 PM, Plaintiff received a solicitation call from Lauren[.]"
- ¶ 50: "[O]n April 17, 2025, at 5:52 PM, Plaintiff received a solicitation call from Lauren[.]"
- ¶ 56: "Between April 19, 2025, through April 22, 2025, Plaintiff received four additional solicitation calls from Quintessa and Markland."

These allegations are patently false, and you knew that before you included them in the Complaint and filed this lawsuit. Moreover, your omission of Kareemiya entirely from the Complaint and failure to join Kareemiya as a defendant was clearly intentional so that your TCPA claims against Quintessa, Roberts Markland, and Tre Meredith would appear legitimate and thus prolong this litigation. You knew that including facts about Kareemiya's involvement and including Kareemiya as a defendant would have entitled Quintessa, Roberts Markland, and Tre Meredith to dismissal of your claims.

Joshua Cacho
June 16, 2025
Page 5 of 6

Equally egregious, despite having no evidence to connect Roberts Markland or Tre Meredith to the alleged calls, you blatantly made up facts in your Complaint in order to fabricate a TCPA claim against them:

- ¶¶ 38-39: "Defendant Markland and Meredith hired Quintessa to market their legal services, knowing that any client sent to Markland and Meredith by Quintessa would come from illegal telemarketing conducted by Quintessa. . . . Marland and Meredith hired Quintessa as an end-around to the marketing prohibition."
- ¶ 63: "Defendants Markland, Meredith, and Quintessa did not train their employees and/or agents on the existence and use of any do-not-call list."
- ¶ 72: "Markland and Meredith are 'vicariously liable' under federal common law principles of agency for TCPA violations committed by third-party telemarketers,' such as the employees of Quintessa."
- ¶ 73: "Markland and Meredith authorized Quintessa to market their legal services."
- ¶ 74: "Markland and Meredith's agent Quintessa made unsolicited phone calls to market the products and services of Defendants Markland and Meredith."
- ¶ 75: "Markland's contract agreement has a section in it soliciting the services of Meredith and a contractual agreement of Meredith[.]"
- ¶ 76: "Markland and Meredith set requirements for Quintessa to qualify potential clients."
- ¶ 77: "Markland and Meredith wrote the script, or a least approved the script, Quintessa used to market the legal services of Markland and Meredith."
- ¶ 78: "Markland and Meredith instruct Quintessa on which states to call and set the minimum qualifications to qualify the prospective clients."
- ¶ 79: "Markland and Meredith pay Quintessa directly for each referral due to the illegal solicitation telemarketing calls made."
- ¶ 80: "Markland and Meredith have a contract with Quintessa appointing Quintessa as their sales agent."
- ¶ 81: "Both Markland and Meredith are fully aware that every client received through Quintessa has been sent to them initially through illegal telemarketing unsolicited calls."
- ¶ 83: "Quintessa is the authorized salesperson of both Markland and Meredith."
- ¶ 89: "Defendants Markland, Meredith, and Quintessa have never been registered to telephone solicit from Texas, or into Texas."

You also pleaded the following facts which are false, which you lack evidence of, and/or, at a minimum, are inconsistent with your previous representations:

- ¶ 40: "Defendants collectively made at least fifteen (15) unauthorized unsolicited calls to Plaintiffs' cellphone."
- ¶ 40: "All calls were made without [Plaintiff's] written or verbal consent."
- ¶ 42: "Plaintiff delivered four do-not-call ('DNC') requests."
- ¶ 60: "Plaintiff did not provide his phone number to Defendants at any point prior to the receipt of the initial phone call."

Joshua Cacho
June 16, 2025
Page 6 of 6

- ¶ 61: "Plaintiff only provided Defendants his phone number to inform Defendants what phone number to add to their internal Do Not Call lists."
- ¶ 62: "Defendants did not have a written do-not-call policy while Defendants were placing solicitation phone calls to Plaintiff."
- ¶ 90: "Quintessa has been made aware of the Texas telephone solicitation registration requirement on multiple occasions and has refused to register."
- ¶ 91: "Quintessa willfully violates the Texas telephone solicitation requirement."

For example, you know that you did not send a DNC request to Quintessa until April 18, 2025. Yet, you falsely plead in the Complaint that "Plaintiff had Delivered a DNC request to Defendants on March 24, 2025." Compl. ¶ 59.

You have filed over 40 TCPA cases in the past four years alone. Given how familiar you are with the TCPA, there is no excuse for bringing a TCPA claim against Quintessa, Roberts Markland, and Tre Meredith, for calls that you know were placed by another entity and were made pursuant to a valid consent form. Lying to the Court, engaging in a scheme to fabricate TCPA allegations, and repeatedly using the scheme to extort settlements is without a doubt sanctionable conduct under Rule 11. The fact that you are proceeding in this case *pro se* will not shield you from the consequences of your failure to comply with Rule 11. *See Annamalai v. Moon Credit Corp.*, No. CV H-16-1277, 2017 WL 5646925, at *3 (S.D. Tex. Apr. 21, 2017) ("A plaintiff's *pro se* status does not protect the plaintiff from the consequences of the fatal flaws in his arguments that lead to dismissal of his many suits nor will it protect him from the requirements of Rule 11 and the authority of a court to impose sanctions.").

If you do not withdraw your claims within twenty-one days of this letter, Quintessa will move for sanctions against you under Rule 11, including recovery of its attorneys' fees and dismissal of your lawsuit with prejudice.

\*    \*    \*

The letter is sent without prejudice to Quintessa's rights and remedies, all of which are expressly reserved.

Sincerely,

Christopher J. Schwegmann