**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| JOSHUA CACHO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | No. 3:25-cv-00169-KC |
| ROBERTS MARKLAND, LLP, LAW | § | |
| OFFICE OF TRE MEREDITH, PLLC, and | § | |
| QUINTESSA LLC, | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' JOINT 12(b)(6) MOTION TO DISMISS

**TABLE OF CONTENTS**

STATEMENT OF ISSUES.................................................................................................................vi

I.      INTRODUCTION ..................................................................................................................1

II.     ARGUMENT..........................................................................................................................2

        A.      Legal Standard.............................................................................................................2

        B.      Plaintiff's Claims Should be Dismissed Under Rule 12(b)(6) Because
                Plaintiff Failed to State a Claim Under the TCPA.............................................3

                1.      The Complaint does not plausibly allege direct liability against
                        Roberts Markland or Tre Meredith under the TCPA...........................4

                2.      Plaintiff does not plead facts sufficient to support vicarious liability
                        against Roberts Markland or Tre Meredith under the TCPA. ..........5

                        i.      Plaintiff fails to sufficiently allege that the calls were placed
                                by an agent acting with the actual authority of Roberts
                                Markland or Tre Meredith. .....................................................7

                        ii.     Plaintiff fails to sufficiently allege that the calls were placed
                                by an agent acting with the apparent authority of Roberts
                                Markland or Tre Meredith. ...................................................11

                3.      Plaintiff cannot establish liability against Defendants for Call Nos. 6
                        through 14 because of the TCPA's "established business
                        relationship" exemption......................................................................13

                4.      Because Plaintiff's TCPA claims must be dismissed, the Court
                        should also dismiss Plaintiff's state law claims. ................................15

        C.      The Court Should Deny Plaintiff Leave to Amend His Complaint.............................15

        D.      Alternatively, the Court Should Permit Jurisdictional Discovery to
                Determine Whether Plaintiff's Claims Should be Dismissed Under Rule
                12(b)(1) for Lack of Standing.................................................................................18

III.    CONCLUSION .....................................................................................................................20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................2, 3, 10

*Bass v. Parkwood Hosp.*, 180 F.3d 234 (5th Cir. 1999)...................................................................15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 2, 3

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) ..................................................................... 7, 12

*Bilek v. Fed. Ins. Co.*, No. 19-8389, 2020 WL 3960445 (N.D. Ill. July 13, 2020), *rev'd on other grounds, Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) ................................. 7, 12

*Bridgeview Health Care, Ltd. v. Clark*, 816 F.3d 935 (7th Cir. 2016)............................................12

*Bryant v. Byron Udell & Assocs. Inc.*, No. 8:23-CV-2171-TPB-SPF, 2024 WL 1075277 (M.D. Fla. Mar. 12, 2024)..............................................................................................11

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) .......................................9

*Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*, 756 F.2d 1103 (5th Cir. 1985) ...................12

*Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659 (W.D. Tex. Aug. 10, 2020) ................................................................................................................ 8, 12

*Canary v. Youngevity Int'l, Inc.*, No. 5:18-03261, 2019 WL 1275343 (N.D. Cal. Mar. 20, 2019)........................................................................................................................ 10, 13

*Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883 (S.D. Tex. 2008) .....................7

*Chem. Serv., Inc. v. Env't Monitoring Sys. Lab.-Cincinnati of U.S. E.P.A.*, 12 F.3d 1256 (3d Cir. 1993) ..........................................................................................................18

*Christiana Tr. v. Riddle*, 911 F.3d 799 (5th Cir. 2018) ................................................................7

*Clark v. Dep't of Pub. Safety & Corr.*, No. 24-30201, 2025 WL 1733666 (5th Cir. June 23, 2025).........................................................................................................................16

*Cunningham v. Channer*, LLC, No. 17-CV1305-FPG, 2018 WL 4620391 (W.D.N.Y. Sept. 26, 2018) ....................................................................................................................11

*Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted sub nom. Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) .................................... 4, 13

*Cunningham v. Radius Glob. Sols., LLC*, No. 4:20-CV-00294, 2021 WL 2258743 (E.D. Tex. June 3, 2021)..........................................................................................................15

*Emrit v. CIA*, No. 2:22-CV-00119, 2022 WL 4287658 (S.D.W. Va. Mar. 31, 2022), *report and recommendation adopted*, No. 2:22-CV-00119, 2022 WL 3594520 (S.D.W. Va. Aug. 23, 2022) ...............................................................................................................1

*Emrit v. DeVos*, No. 8:20-CV-773-T-60TGW, 2020 WL 9078298, at *3 (M.D. Fla. Apr. 20, 2020) .........................................................................................................................1

*Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217 (7th Cir. 1988)................................................. 17, 18

*Forteza v. Affordable Auto Shield, Inc.*, No. 3:23-CV-875-B-BN, 2024 WL 898905 (N.D. Tex. Feb. 29, 2024)........................................................................................................5

*Freeman v. United States*, 556 F.3d 326 (5th Cir. 2009) ...............................................................20

*Freidman v. Massage Envy Franchising, LCC*, Civil No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ...........................................................................13

*Garcia v. Credit One Bank, N.A.*, No. 218CV191JCMEJY, 2020 WL 4431679 (D. Nev. July 31, 2020)................................................................................................................19

*Gillam v. Reliance First Cap., LLC*, No. 21CV4774JMAJMW, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ..........................................................................................5

*Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Massachusetts*, No. 3:24-CV-00289-DB, 2025 WL 1145266 (W.D. Tex. Apr. 15, 2025) .........................................................................passim

*GSS Props., Inc. v. Kendale Shopping Center, Inc.*, 119 F.R.D. 379 (M.D.N.C. 1988) ...................................17

*Heller v. Marriott Vacations Worldwide Corp.*, No. EP22CV00398FMMAT, 2023 WL 6702696 (W.D. Tex. Oct. 11, 2023), *report and recommendation adopted*, No. EP-22-CV-00398-FM, 2024 WL 1080443 (W.D. Tex. Feb. 2, 2024) ............................................. 7, 12

*Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016).......................................................18

*Hodgin v. UTC Fire & Sec. Americas Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018) ..................................... 8, 9

*Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted sub nom. Hunsinger v. Dynata LLC*, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023) .....................................................................4

*In re Caroline Paxson Adver., Inc.*, 938 F.2d 595 (5th Cir. 1991) ....................................................7

*In re DePugh*, 409 B.R. 84 (Bankr. S.D. Tex. 2009) ...................................................................18

*In re Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514 (N.D. W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018) ............... 9, 10

*Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129 (E.D.N.Y. 2015)..............................................11

*Johnson v. Priceline.com, Inc.*, 711 F.3d 271 (2d Cir. 2013).........................................................8

*Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987 (5th Cir. 2005) ...............................................16

*Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018) ...............................................8

*Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)....................................18

*Lucky v. Haynes*, No. 3:14-CV-2915-L, 2015 WL 4525689 (N.D. Tex. July 23, 2015) ............................3

*MacGregor v. Milost Glob., Inc.*, No. 117CV06691LTSKHP, 2019 WL 2453340 (S.D.N.Y. Apr. 19, 2019), *report and recommendation adopted*, No. 17-CV-6691-LTS-KHP, 2019 WL 2723522 (S.D.N.Y. July 1, 2019)................................................17

*Mann v. Bartolotta*, No. 3:08-CV-1834PCD, 2009 WL 1098982 (D. Conn. Apr. 21, 2009) ...................17

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368 (5th Cir. 2014) ...............................16

*Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602 (5th Cir. 2018) ...............................................18

*Naiman v. TranzVia LLC*, No. 17-4813, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017)............................9

*Newton v. United States*, No. 3:17-CV-1419-G-BN, 2018 WL 4471785 (N.D. Tex. July 13, 2018), *report and recommendation adopted*, No. 3:17-CV-1419-G (BN), 2018 WL 4467914 (N.D. Tex. Sept. 17, 2018) ...............................................14

*Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096 (5th Cir. 1990) ...............................................7

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ...............................................18

*Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244 (4th Cir. 1993) ...............................14

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ...............................................16

*Schakosky v. Client Servs., Inc.*, 634 F. Supp. 2d 732 (E.D. Tex. 2007)........................................12

*Shanghai Hailian Elec. Tools Co., Ltd. v. Home Depot U.S.A., Inc.*, No. 3:16-cv-1451-D, 2017 WL 4005139 (N.D. Tex. Sept. 12, 2017) ...............................................9

*SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 340 F.R.D. 554 (E.D. La. 2022)...........................16

*Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB, 2016 WL 4618780 (C.D. Cal. July 29, 2016).......................................................7

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)........................................................20

*Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) ........................................19

*Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014)........................................................8

*Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ...............................................2

**DEFENDANTS' JOINT 12(b)(6) MOTION TO DISMISS**    iv

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ........................................................15

*Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736 (N.D. Ill. Oct. 18, 2017) ...................5

*Vuoncino v. Forterra, Inc.*, 140 F.4th 200 (5th Cir. 2025) ...........................................................16

*Wallace v. NYC Dep't of Corr.*, 112 F. App'x 794 (2d Cir. 2004) ...............................................17

*Whimsicality, Inc. v. Battat*, 27 F. Supp. 2d 456 (S.D.N.Y. 1998) ...............................................17

*Wong v. Stripling*, 881 F.2d 200 (5th Cir. 1989) .........................................................................15

## STATUTES

47 C.F.R. § 64.1200(c) ...................................................................................................... 1, 3, 4, 5

47 C.F.R. § 64.1200(c)(2) .........................................................................................................4

47 C.F.R. § 64.1200(f)(6) .................................................................................................. 14, 15

47 U.S.C. § 227(b)(1)(C)(i) ....................................................................................................14

47 U.S.C. § 227(c) ............................................................................................................. 1, 3

47 U.S.C. § 227(c)(5) ......................................................................................................... 3, 5

## MISCELLANEOUS

FED. R. CIV. P. 12(b)(1) ............................................................................................................1

FED. R. CIV. P. 12(b)(6) ....................................................................................................... 1, 2

FED. R. CIV. P. 12(d) ................................................................................................................2

RESTATEMENT § 1.01, cmt. f(1) .................................................................................................7

TEX. BUS. COM. CODE § 302.101 ................................................................................................3

TEX. BUS. COM. CODE § 305.053 ................................................................................................3

TEX. PENAL CODE § 38.12(b) .....................................................................................................3

TEX. PENAL CODE § 82.0651 ......................................................................................................3

## STATEMENT OF ISSUES

1.    Whether Plaintiff's claims against Defendants should be dismissed under Rule 12(b)(6) for failure to state a claim.

2.    Alternatively, whether Defendants should be permitted to take jurisdictional discovery to determine whether Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

Defendants Quintessa LLC ("Quintessa"), Roberts Markland, LLC ("Roberts Markland"), and the Law Office of Tre Meredith, PLLC ("Tre Meredith") (collectively, "Defendants") jointly move to dismiss Plaintiff Joshua Cacho's Original Complaint (Dkt. #3) pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in the alternative, request jurisdictional discovery to determine whether dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1).[1]

## I.    INTRODUCTION

This case arises out of 9 phone calls and 5 text messages that *pro se* Plaintiff Joshua Cacho allegedly received in violation of the Telephone Protection Consumer Act (TCPA), the Texas Telephone Solicitation Act, a Texas statue governing telephone solicitation registration requirements, and a Texas statute prohibiting civil barratry.[2] *See* Dkt. #3. Defendants jointly request that the Court dismiss Plaintiff's Complaint under Rule 12(b)(6) for two reasons.

First, Plaintiff fails to allege facts sufficient to state a claim under the TCPA against Roberts Markland and Tre Meredith. Count One alleges that Defendants violated § 64.1200(c) of the TCPA, which prohibits telemarketers from placing more than one call or text to a number registered on the National Do-Not-Call (DNC) List. *See* 47 C.F.R. § 64.1200(c); 47 U.S.C. § 227(c). However, Plaintiff does not allege that Roberts Markland or Tre Meredith placed more than one call to Plaintiff's phone. Thus, Plaintiff has failed to assert facts that would support a theory of direct liability against Roberts Markland and Tre Meredith. Plaintiff also fails to plead sufficient facts to establish a theory of vicarious

---

[1] As to Quintessa, this Motion is filed subject to Quintessa's 12(b)(2) Motion to Dismiss.

[2] While unrepresented by counsel, Plaintiff is by no means a typical *pro se* litigant. Since September 2021 alone, he has filed at least 41 TCPA lawsuits in federal courts, primarily in this Court and the Middle District of Florida, related to at least nine cell phone numbers that he personally purchased and registered, all, allegedly, for "residential" use: (1) 915-200-5482; (2) 407-780-9810; (3) 915-200-0806; (4) 915-239-3258 or 915-259-3258; (5) 407-577-3823; (6) 407-577-3881; (7) 713-955-7208; (8) 407-577-3822; and (9) 713-804-9650. *See* Ex. A (Decl. of J. Cox), Ex. A-1 (Plaintiff's PACER Search Results), Ex. A-2 (Chart of Plaintiff's Alleged Phone Numbers). As such, Plaintiff can be properly described as a "'savvy and experienced pro se litigant' who 'is more than familiar with his federal court filing and pleading responsibilities'" and need not be held to the less stringent pleading standards often afforded to plaintiffs proceeding *pro se*. *Emrit v. CIA*, No. 2:22-CV-00119, 2022 WL 4287658, at *11 (S.D.W. Va. Mar. 31, 2022), *report and recommendation adopted*, No. 2:22-CV-00119, 2022 WL 3594520 (S.D.W. Va. Aug. 23, 2022) (citing *Emrit v. DeVos*, No. 8:20-CV-773-T-60TGW, 2020 WL 9078298, at *3 (M.D. Fla. Apr. 20, 2020)).

---

liability against Roberts Markland and Tre Meredith. Based on the allegations in the Complaint, Plaintiff cannot establish that Quintessa was acting as an agent of Roberts Markland and Tre Meredith when Quintessa (according to Plaintiff) allegedly placed Call Nos. 1 through 12 and 14.

Second, Plaintiff cannot establish liability against Defendants for Call Nos. 6 through 14 because Plaintiff's own allegations show that these communications fall under the TCPA's "established business relationship" exemption.

Based on the foregoing, Quintessa requests that Plaintiff's Complaint be dismissed with prejudice in its entirety against Roberts Markland and Tre Meredith under Rule 12(b)(6), and that Plaintiff's Complaint be partially dismissed under Rule 12(b)(6) against Quintessa as to all claims based on Call Nos. 6 through 14.[3] Should the Court decline to dismiss Plaintiff's Complaint in its entirety, Defendants request that the Court permit Defendants to conduct jurisdictional discovery to determine whether Plaintiff's claims are subject to dismissal under Rule 12(b)(1) for lack of standing.

## II.    ARGUMENT

### A.    Legal Standard.

This Court reviews a motion to dismiss under Rule 12(b)(6) to determine whether the complaint contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Although all reasonable inferences should be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). A complaint that tenders "naked assertions devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678. In contrast, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[3] Quintessa additionally requests that should the Court see fit to do so, the Court consider the evidence attached to Quintessa's 12(b)(2) Motion to Dismiss in ruling on this Motion pursuant to Rule 12(d). *See* FED. R. CIV. P. 12(d).

the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Lucky v. Haynes*, No. 3:14-CV-2915-L, 2015 WL 4525689, at *4 (N.D. Tex. July 23, 2015). When a plaintiff "ha[s] not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord: Iqbal*, 556 U.S. at 680.

**B.     Plaintiff's Claims Should be Dismissed Under Rule 12(b)(6) Because Plaintiff Failed to State a Claim Under the TCPA.**

Plaintiff alleges a total of four claims against Defendants: one TCPA claim and three state law claims. *See* Dkt. #3 ¶¶ 97-101. In Count One, Plaintiff asserts one claim arising under federal law: a TCPA violation under 47 U.S.C. § 227(c) / 47 C.F.R. § 64.1200(c). Section 64.1200(c) of the TCPA requires telemarketing companies to refrain from calling persons whose phone numbers are registered on the National DNC List. *See* 47 C.F.R. § 64.1200(c). The TCPA creates a private right of action only if the telemarketing company initiates more than one call within any 12-month period to a residential DNC phone number. *See* 47 U.S.C. § 227(c)(5).

Plaintiff's state law claims are alleged in Counts Two through Four of the Complaint. *See* Dkt. #3 ¶¶ 102-125. Count Two asserts a violation of Texas Business and Commerce Code § 302.101 related to registration certificates required to place telephone solicitations in Texas or to Texas residents. *See* TEX. BUS. COM. CODE § 302.101. Count Three, like Count One, permits a Plaintiff to bring a private cause of action under the Texas Telephone Solicitation Act for a violation of 47 U.S.C. § 227(c). *See* TEX. BUS. COM. CODE § 305.053. Finally, Count Four asserts a violation of Texas Penal Code § 82.0651 related to civil barratry. *See* TEX. PENAL CODE §§ 38.12(b), 82.0651.

As explained below, the Court need not assess whether Plaintiff has sufficiently alleged his Texas state law claims against Tre Meredith and Roberts Markland because Plaintiff failed to allege facts sufficient to state a claim against them under federal law. Accordingly, all of Plaintiff's claims

against Tre Meredith and Roberts Markland should be dismissed under Rule 12(b)(6). Additionally, any state law claims against Defendants based on Call Nos. 6 through 14 should be dismissed as Plaintiff has failed to state a claim under the TCPA related to these calls.

> **1.    The Complaint does not plausibly allege direct liability against Roberts Markland or Tre Meredith under the TCPA.**

A defendant may be either directly or vicariously liable under the TCPA. *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted sub nom. Hunsinger v. Dynata LLC*, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023) (citations omitted). Direct liability is imposed if the defendant "initiate[d]" the alleged call. *Id.* "A person or entity 'initiates' a telephone call when 'it takes the steps necessary to physically place a telephone call.'" *Cunningham v. Lifestyles Dev.*, *LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039, at *1 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted sub nom. Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) ("*Lifestyles*"). The defendant may also be vicariously liable for violations by third parties under the TCPA "where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller." *Hunsinger*, 2023 WL 2377481, at *5.

Count One in the Amended Complaint alleges a claim against Defendants under § 64.1200(c) of the TCPA. *See* Dkt. #3 ¶¶ 97-101. Section 64.1200(c) prohibits any person or entity from "initiat[ing] any telephone solicitations to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). According to the Complaint, Plaintiff's number was registered on the National DNC List prior to the alleged calls. Dkt. #3 ¶ 33.

However, under § 227(c)(5), private actions for a violation of § 64.1200(c) can only be brought against companies that initiated more than one call within a 12-month period to the plaintiff's DNC phone number. *See* 47 U.S.C. § 227(c)(5); *see also Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736,

at *2 (N.D. Ill. Oct. 18, 2017) ("Direct liability under the TCPA, however, applies only to entities that 'initiate' the telemarketing calls. . . . [A]s the FCC made clear to initiate a call means to physically place a telephone call."). Here, Plaintiff alleges that he received 14 calls: Call Nos. 1 through 12 and 14 that Plaintiff alleges were initiated by Quintessa, and Call No. 13 that Plaintiff alleges was initiated by Roberts Markland. *See* Dkt. #3 ¶¶ 41–42, 44–45, 48–50, 58. Other than Call No. 13, Plaintiff never claims that Roberts Markland initiated or was directly involved in any other call. *See* Dkt. #3 ¶ 58. Further, Plaintiff does not allege that Tre Meredith initiated or was directly involved in any call *at all.* *See* Dkt. #3 ¶ 58.

Even assuming *arguendo* that Call No. 13 was a "solicitation" as that term is used in the TCPA, Plaintiff's failure to plausibly plead that Roberts Markland and Tre Meredith initiated more than one call within a 12-month period is fatal to his § 64.1200(c) claim. *See, e.g.*, *Forteza v. Affordable Auto Shield, Inc.*, No. 3:23-CV-875-B-BN, 2024 WL 898905, at *5 (N.D. Tex. Feb. 29, 2024) (dismissing TCPA claim because the plaintiff failed to plausibly allege "more than one call"); *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Massachusetts*, No. 3:24-CV-00289-DB, 2025 WL 1145266, at *4 (W.D. Tex. Apr. 15, 2025) (holding that a defendant could not be directly liable for a TCPA violation where the plaintiff failed to allege facts establishing that the defendant "initiated" the calls within the meaning of the TCPA); *Gillam v. Reliance First Cap., LLC*, No. 21CV4774JMAJMW, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing plaintiff's § 64.1200(c) claim because the plaintiff's complaint failed to plausibly plead receipt of more than one call attributable to the defendant).

Therefore, Plaintiff has no basis to maintain a claim against Roberts Markland or Tre Meredith based on their direct liability for a violation of § 64.1200(c).

### 2. Plaintiff does not plead facts sufficient to support vicarious liability against Roberts Markland or Tre Meredith under the TCPA.

Unable to establish direct liability against Roberts Markland and Tre Meredith, Plaintiff attempts to plead that they are vicariously liable for all calls that Plaintiff alleges were placed by

Quintessa. To establish Roberts Markland and Tre Meredith are vicariously liable for any of the alleged phone calls, Plaintiff must point to sufficient factual allegations to plausibly state an agency relationship between Roberts Markland and Tre Meredith and Quintessa. "The existence of an agency relationship can be shown by demonstrating (1) actual authority where the principal assigns the agent's task and controls the means and details of the process by which the agent will accomplish that task, (2) apparent authority, which holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal, or (3) ratification, where a principal may be liable if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances." *Gonzalez,* 2025 WL 1145266, at \*4.

Here, Plaintiff appears to allege that Roberts Markland and Tre Meredith are vicariously liable for Quintessa's alleged placement of Call Nos. 1 through 12 and 14 under actual and apparent authority theories. Specifically, Plaintiff alleges that Roberts Markland and Tre Meredith "hired" and "authorized Quintessa to market their legal services," "set requirements for Quintessa to qualify potential clients," "wrote the script, or at least approved the script, Quintessa used to market the legal services," "instruct[ed] Quintessa on which states to call and set the minimum qualifications to qualify the prospective clients," "pa[id] Quintessa directly for each referral due to the illegal solicitation telemarketing calls made," and "have a contract with Quintessa appointing Quintessa as their sales agent" or "authorized salesperson." Dkt. #3 ¶¶ 36, 72–84. For the reasons outlined below, these allegations are insufficient to establish vicarious liability under the TCPA.[4]

---

[4] Should the Court agree that Plaintiff has not sufficiently alleged vicarious liability against Tre Meredith and Roberts Markland, then, in addition to dismissal under Rule 12(b)(6), Tre Meredith and Roberts Markland are entitled to dismissal of Plaintiff's TCPA claim under Rule 12(b)(1). *See Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB, 2016 WL 4618780, at \*4 (C.D. Cal. July 29, 2016) (dismissing TCPA claim and finding "[a]ny depletion of phone battery, or aggravation and nuisance, resulting from only one call, is a *de minimis* injury" and "not sufficient to confer standing" in federal court).

### i. *Plaintiff fails to sufficiently allege that the calls were placed by an agent acting with the actual authority of Roberts Markland or Tre Meredith.*

Actual authority exists where a principal "expressly or implicitly grants the agent authority to perform a particular act." *Gonzalez*, 2025 WL 1145266, at *4. "For TCPA cases, the relevant inquiry is whether the principal controlled—or had the right to control—the 'manner and means' of the telemarketing campaign." *Id.* (citations omitted). "The level of control to establish agency must be high and very significant." *Heller v. Marriott Vacations Worldwide Corp.*, No. EP22CV00398FMMAT, 2023 WL 6702696, at *5 (W.D. Tex. Oct. 11, 2023), *report and recommendation adopted*, No. EP-22-CV-00398-FM, 2024 WL 1080443 (W.D. Tex. Feb. 2, 2024) (citations omitted); *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) (to demonstrate actual authority, a plaintiff must show that "(1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency.").

Under both Texas and federal common law, an agency relationship requires that "[t]he alleged principal must have the right to control both the means and the details of the process by which the alleged agent is to accomplish his task." *In re Caroline Paxson Adver., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991); *see also Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1102 (5th Cir. 1990) (discussing federal common law). "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Christiana Tr. v. Riddle*, 911 F.3d 799, 803 (5th Cir. 2018) (quoting RESTATEMENT § 1.01, cmt. f(1)); *see also Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 887-88 (S.D. Tex. 2008) (holding that "the right of control" in the agency context "includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task") (internal citation omitted).

Courts have widely recognized vicarious liability cannot attach in the TCPA context without the "essential ingredient" of control. For example, in *Johnson*, the plaintiff alleged that Priceline.com

acted as the consumers' agent to book travel because the consumers controlled the "reservation date, location, hotel quality, and bid price." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 278 (2d Cir. 2013). However, the Second Circuit agreed that the plaintiff had failed to establish actual agency authority because the consumers "retain[ed] no right of interim control over Priceline's procurement of the desired reservation" or any "interim right to give instructions." *Id.* at 278–79 ("[T]hat right of control is what distinguishes an agency relationship from a mere contractual one.").[5]

Here, even if taken as true, Plaintiff's allegations suggest nothing more than a standard arms-length contractual relationship or lead purchase arrangement. Courts have repeatedly held that such allegations—even when paired with terms like "agent" or "authorized salesperson"— are insufficient to show the requisite control over the specific manner and means of the telemarketing conduct. *See Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("Agency means more than mere passive permission; it involves request, instruction, or command.").

For example, even though Plaintiff alleges that Tre Meredith and Roberts Markland "set requirements for Quintessa to qualify potential clients," "wrote the script, or at least approved the script, Quintessa used to market the legal services," and "instruct Quintessa on which states to call and set the minimum qualifications to qualify the prospective clients," Dkt. #3 ¶¶ 76–78, Plaintiff pleads no facts showing that Tre Meredith or Roberts Markland directed how Quintessa made calls,

---

[5] *See also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018); *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) ("In order for an agency relationship to exist [for vicarious liability], [the defendants] must have had the authority to assign tasks and control the means and details of the process by which the third-party telemarketer responsible for calling Plaintiff... conducts its business."); *In re Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018) ("[I]n order to prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted."); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678, 679 (9th Cir. 2014) (to establish an agency relationship in the TCPA context the alleged principal must have "controlled or had the right to control [the alleged agents] and, more specifically, the manner and means of the [telemarketing] campaign they conducted.").

---

**DEFENDANTS' JOINT 12(b)(6) MOTION TO DISMISS**

chose dialing technology, selected recipients, or handled DNC requests — all of which are necessary to show day-to-day operational control to establish vicarious liability under the TCPA. *See, e.g.*, *In re Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520–21 (N.D. W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Ams. Corp., Inc.*, 885 F.3d 243 (4th Cir. 2018) ("[P]roviding scripts for in-person calls is not evidence of agency" and finding no agency where defendant approved script and paid per lead but did not control call execution); *Shanghai Hailian Elec. Tools Co., Ltd. v. Home Depot U.S.A., Inc.*, No. 3:16-cv-1451-D, 2017 WL 4005139, at *4 (N.D. Tex. Sept. 12, 2017) (finding plaintiff failed to plausibly plead actual or apparent authority where plaintiff asserted "Home Depot determines specifications of the products, the method of shipping, the entry port for the destination and all other details in the order process" without more because plaintiff failed to allege that the alleged agents were subject to control of Home Depot); *Naiman v. TranzVia LLC*, No. 17-4813, 2017 WL 5992123, at *1, 3, 11 (N.D. Cal. Dec. 4, 2017) (dismissing allegations that principal "instructed [the telemarketer] with respect to the volume of calling and the number of leads," and "had day-to-day control over [the telemarketer's] actions," absent pleading "any facts showing how [the principal] did those things . . . or what facts the allegations are based on").

Just last year, the Southern District of New York dismissed nearly identical claims brought by Plaintiff Joshua Cacho against another law firm. In that case, Cacho alleged the firm "provid[ed] lead-qualifying instructions and lead volume limits" to telemarketers and "had absolute control over whether, and under what circumstances, [Defendant] would accept a customer." *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 215 (S.D.N.Y. 2024). The court found these allegations insufficient to establish agency, holding that placing limits on the type and number of accepted leads did not rise above an arms-length contractual relationship or reflect the type of "interim control" necessary to show actual authority. *Id.*

The court also rejected an allegation nearly identical to the one Plaintiff makes here: that "Both Markland and Meredith are fully aware that every client received through Quintessa has been sent to them initially through illegal telemarketing unsolicited calls." Dkt. #3 ¶ 81. As the court explained in *McCarthy*, "[t]he Complaint cannot be sustained based on Plaintiff's legal conclusions, couched as factual allegations, that Defendant 'knowingly and actively attempted to accept business that originated through illegal telemarketing' and 'knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf.'" *Id.* at 218.

Plaintiff's conclusory assertions that Tre Meredith and Roberts Markland "authorized" Quintessa to conduct certain marketing services do not cure the pleading defect. As courts routinely note, labels and legal conclusions are not substitutes for well-pled facts. *Iqbal*, 556 U.S. at 678. *See, e.g.*, *Monitronics*, 223 F. Supp. 3d at 527 (finding no agency to support a vicarious liability TCPA claim against the defendants and stating, "the fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient to hold the moving defendants in this case liable.").

Finally, Plaintiff alleges that Roberts Markland and Tre Meredith "hired" and "pa[id] Quintessa" for leads. Dkt. #3 ¶¶ 39, 76. The fact that Roberts Markland and Tre Meredith agreed to pay Quintessa for leads is not enough to infer that Quintessa was acting at Roberts Markland's and Tre Meredith's direction or on their behalf when Quintessa allegedly placed the alleged calls to Plaintiff. *See, e.g.*, *Canary v. Youngevity Int'l, Inc.*, No. 5:18-03261, 2019 WL 1275343, at *1, *4–6 (N.D. Cal. Mar. 20, 2019) (concluding that plaintiff's allegations that a principal "pa[id] commissions" to a telemarketer and "vet[ted] all . . . [of its] marketing materials" were "too general and conclusory to plead that [the principal] authorized the March 15 call in a written or oral communication."). Even in instances where plaintiffs have alleged a direct contractual relationship between the defendant and the caller, courts have found that allegations of a contractual relationship do not adequately plead agency

because a contractual relationship does not, by itself, establish the essential element of control.

For instance, in analyzing personal jurisdiction in the context of a TCPA claim, the Middle District of Florida recently held that allegations that the defendant (1) contracted the third party who placed the call, (2) "dictated the content of [the] telemarketing calls," and (3) only compensated the third party for potential transfers that were interested in the defendant's product, were all insufficient to adequately plead agency between the defendant and the third party caller. *Bryant v. Byron Udell & Assocs. Inc.*, No. 8:23-CV-2171-TPB-SPF, 2024 WL 1075277, at *3 (M.D. Fla. Mar. 12, 2024); *see also Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 137 (E.D.N.Y. 2015) (finding that plaintiff failed to allege an agency relationship under the TCPA because although the plaintiff alleged that the defendant contracted with and directed a telemarketer to send text messages on the defendant's behalf, a contract – "even one that imposes certain constraints on [the telemarketer] – does not necessarily mean that [the defendant] had the power to give 'interim instructions' to [the telemarketer], the hallmark of an agency relationship."); *Cunningham v. Channer*, LLC, No. 17-CV1305-FPG, 2018 WL 4620391, at *6 (W.D.N.Y. Sept. 26, 2018) (holding plaintiff's allegations that the defendant entered into a "written contract with the calling party and knows that they will make illegal calls to harass and intimidate consumers" were insufficient to establish control).

Thus, even if taken as true, Plaintiff's allegations that Roberts Markland and Tre Meredith "hired" Quintessa or "paid" Quintessa for leads are insufficient to establish that they controlled the manner and means by which Quintessa allegedly made the alleged calls. Therefore, Plaintiff has not sufficiently alleged an agency theory based on actual authority.

> ii. **Plaintiff fails to sufficiently allege that the calls were placed by an agent acting with the apparent authority of Roberts Markland or Tre Meredith.**

Apparent authority exists where a principal "knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority," such that a third party "reasonably

believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Gonzalez*, 2025 WL 1145266, at *5 (citations omitted). Thus, apparent authority must be traceable to the conduct of the principal—in this case, to Roberts Markland's or Tre Meredith's conduct. *Heller*, 2023 WL 6702696, at *7 (citing *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020)); *see also Bridgeview Health Care, Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016) ("To create apparent authority, the principal must speak, write, or otherwise act toward a third party.").

The Complaint is entirely devoid of facts to hold Roberts Markland or Tre Meredith liable under an apparent authority theory. Apparent authority requires that the principal communicate to the plaintiff that the agent has authority to act on the principal's behalf. *Schakosky v. Client Servs., Inc.*, 634 F. Supp. 2d 732, 735 (E.D. Tex. 2007). While agents may be successful in creating an appearance of authority by their own acts and statements, such an appearance does not create apparent authority over the principal. *Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*, 756 F.2d 1103, 1112 (5th Cir. 1985) (citations omitted); *see also Bilek v. Fed. Ins. Co.*, No. 19-8389, 2020 WL 3960445, at *6 (N.D. Ill. July 13, 2020), *rev'd on other grounds*, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) (dismissing apparent authority allegations against the alleged principal who was "identified on the calls by the telemarketer[s]" and "provided real-time . . . quotes," because plaintiff "d[id] not allege he had any contact with [alleged principal] or that [the alleged principal] otherwise made any manifestations that the telemarketers were acting as its agent.").

The Complaint alleges no facts showing that Plaintiff relied on anything that Roberts Markland or Tre Meredith did or said. The fact that Quintessa allegedly marketed Roberts Markland's and Tre Meredith's services is not sufficient to create a presumption that Roberts Markland and Tre Meredith were responsible for initiating the calls. *See Freidman v. Massage Envy Franchising, LCC*, Civil No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at *1 (S.D. Cal. June 13, 2013) (finding that plaintiff failed to

sufficiently allege that the defendant sent the message, even though the plaintiff pleaded content of the message mentioned the defendant's services and used its name); *Gonzalez*, 2025 WL 1145266, at *5 (finding that plaintiff failed to plausibly allege apparent authority theory under Rule 12(b)(6) because plaintiff did not allege conduct by the principal that led her to believe the telemarketer was an agent of the principal); *Canary*, 2019 WL 1275343, at *8 ("Canary does not allege that he reasonably relied upon something said or done by Youngevity to his detriment, and therefore the apparent authority theory fails.").

Plaintiff never alleges that Roberts Markland or Tre Meredith said or did anything that could have led Plaintiff to believe that Quintessa allegedly placed any of the alleged calls on their behalf. In fact, the Complaint contains no allegation that Tre Meredith was *ever* named in any of the calls at issue, had *any* direct communication with Plaintiff, or took any specific action related to any alleged communication. Further, the Complaint also does not explain how, based on the references to Tre Meredith in the retainer agreement, Plaintiff reasonably believed the caller was an agent of Tre Meredith and Roberts Markland. *See Lifestyles*, 2019 WL 4282039, at *5 (finding plaintiff did not sufficiently plead agency relationship, in part, as there is no allegation that "based on the references in the [contract], he reasonably believed the entities who called him were agents of [the alleged principal]."). While Plaintiff alleges he received 1 text message from Roberts Markland, Plaintiff did not include the contents of that text message in his Complaint or explain how that text message made him believe that Quintessa was acting on Roberts Markland's behalf.

In sum, Plaintiff has not pleaded any facts about Roberts Markland's or Tre Meredith's conduct that reasonably led him to believe Quintessa was acting as their agent. The absence of such allegations is fatal to Plaintiff's apparent authority theory.

3.    **Plaintiff cannot establish liability against Defendants for Call Nos. 6 through 14 because of the TCPA's "established business relationship" exemption.**

The TCPA states in relevant part, "[i]t shall be unlawful for any person within the United

States, or any person outside the United States if the recipient is within me United States . . . (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless . . . (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient." 47 U.S.C. § 227(b)(1)(C)(i). For purposes of the prohibitions on sending unsolicited advertisements, an "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(6).

Applied here, the "established business relationship" exemption constitutes a complete bar to Plaintiff's claims against all Defendants related to Call Nos. 6 through 14.[6] Plaintiff's allegations make it clear that during Call No. 5, Plaintiff intentionally engaged in conversation with the alleged caller, who was allegedly calling to market services related to personal injuries sustained in car accidents. *See* Dkt. #3 ¶¶ 41, 43. Plaintiff continued to express interest in the caller's services in following calls, including Plaintiff even initiating a call to Quintessa. *See* Dkt. #3 ¶¶ 45, 48, 51. Thus, each alleged call that Plaintiff received after Call No. 5 was a direct result of Plaintiff's own inquiry during Call No. 5 in which he pretended to be interested in the caller's services. Therefore, all alleged calls after Call

---

[6] The Court should consider Defendants' affirmative defense that the alleged conduct falls under the "established business relationship" exemption under the TCPA, because the existence of facts creating the exemption are clear on the face of the Complaint. Generally, "[a] motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). However, "[i]n the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the *face of the complaint." Id.* (emphasis added); *see also Newton v. United States*, No. 3:17-CV-1419-G-BN, 2018 WL 4471785, at *6 (N.D. Tex. July 13, 2018), *report and recommendation adopted*, No. 3:17-CV-1419-G (BN), 2018 WL 4467914 (N.D. Tex. Sept. 17, 2018) ("And, in order to consider this defense under a Rule 12(b)(6) motion, "the defense must appear on the face of the complaint."). Here, it is clear from the face of the Complaint that Plaintiff had an "established business relationship" with Defendants because Plaintiff admits that he intentionally engaged in communications with Defendants related to the services allegedly marketed on the calls. *See, e.g.*, Dkt. #3 ¶¶ 43, 41.

---

No. 5—Call Nos. 6 through 14—fall under the "established business relationship" exemption because they were sent as a follow up to a "voluntary two-way communication" "on the basis of an inquiry" Plaintiff made by feigning interest in the caller's services. *See* 47 C.F.R. § 64.1200(f)(6). Accordingly, Plaintiff cannot establish liability against Defendants for Call Nos. 6 through 14.

4.  **Because Plaintiff's TCPA claims must be dismissed, the Court should also dismiss Plaintiff's state law claims.**

Where federal claims supplying subject matter jurisdiction are dismissed, remaining state claims should likewise be dismissed. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.") (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *see also Cunningham v. Radius Glob. Sols., LLC*, No. 4:20-CV-00294, 2021 WL 2258743 (E.D. Tex. June 3, 2021) (declining to exercise supplemental jurisdiction to keep plaintiff's state law claim because the court dismissed the federal TCPA claim).

As explained above, Plaintiff's TCPA claim against Roberts Markland and Tre Meredith for all alleged calls and Plaintiff's TCPA claim against Quintessa for Call Nos. 6 through 14 are subject to dismissal under Rule 12(b)(6). As a result, the Court need not assess whether Plaintiff sufficiently alleged his Texas state law claims based on these calls because Plaintiff failed to allege facts sufficient to state a claim under federal law. Accordingly, Plaintiff's state law claims against Roberts Markland and Tre Meredith for all alleged calls, and against Quintessa for Call Nos. 6 through 14, should be dismissed as well.

C.  **The Court Should Deny Plaintiff Leave to Amend His Complaint.**

While Rule 15(a) evinces a bias in favor of granting leave to amend, a district court may deny leave if it has a "substantial reason" for doing so. *Vuoncino v. Forterra, Inc.*, 140 F.4th 200, 206 (5th Cir.

2025); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)) ("Leave to amend is by no means automatic[.]"). "Such substantial reasons include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Clark v. Dep't of Pub. Safety & Corr.*, No. 24-30201, 2025 WL 1733666, at *6 (5th Cir. June 23, 2025) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).

Should the Court grant this Motion or Quintessa's Rule 12(b)(2) Motion to Dismiss and dismiss Plaintiff's claims, the Court should deny Plaintiff leave to amend. First, Plaintiff engaged in bad faith in pleading the allegations in his Complaint and any amendment would be in bad faith as well. "Bad faith amendments include amendments that are abusive, designed to secure a tactical advantage, or include allegations that are specious and insufficient to state a claim." *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 340 F.R.D. 554, 561 (E.D. La. 2022). "Likewise, when a party is aware of facts and fails to include them in the complaint, that can give rise to the inference that the party was engaging in tactical maneuvers to force the court to consider various theories seriatim." *Id.*

Here, as fully discussed in Quintessa's Rule 12(b)(2) Motion to Dismiss, Plaintiff intentionally pleaded false allegations in order to fabricate a TCPA claim. Intentionally misrepresenting facts to the court is bad faith and grounds for denial of a request for leave to amend. *See, e.g.*, *MacGregor v. Milost Glob., Inc.*, No. 117CV06691LTSKHP, 2019 WL 2453340, at *6 (S.D.N.Y. Apr. 19, 2019), *report and recommendation adopted*, No. 17-CV-6691-LTS-KHP, 2019 WL 2723522 (S.D.N.Y. July 1, 2019) (denying leave to amend where plaintiff intentionally misrepresented facts in the original complaint in order to survive dismissal under Rule 12, including by omitting the names of relevant entities); *Mann v. Bartolotta*, No. 3:08-CV-1834PCD, 2009 WL 1098982, at *2 (D. Conn. Apr. 21, 2009) (denying leave to amend where plaintiff intentionally omitted relevant dates from the complaint in an attempt to

survive dismissal under Rule 12); *Wallace v. NYC Dep't of Corr.*, 112 F. App'x 794, 795 (2d Cir. 2004) ("As appellant here intentionally omitted the unnamed officers from his initial complaint, and because addition of those officers over eight years after the events transpired would surely be a source of prejudice . . . [l]eave to amend was [ ] properly denied."); *Whimsicality, Inc. v. Battat*, 27 F. Supp. 2d 456, 465 (S.D.N.Y. 1998) (denying motion to amend because plaintiff intentionally misrepresented facts to the court and acted in bad faith); *see also Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988) ("While Fed. R. Civ. P. 15 favors amendments when required by justice, it is not a license for carelessness or gamesmanship.").

Further, the facts that Plaintiff misrepresented and omitted were known to Plaintiff before he filed his Complaint. That alone is grounds for denial of leave to amend. *See Wallace*, 1996 WL 586797, at \*2 (Where a plaintiff "blatantly changes his statement of the facts in order to respond to the defendants' motion to dismiss," and "directly contradicts the facts set forth in his original complaint [in his amended complaint]," courts will "accept[ ] the facts as described in the original complaint as true and conclude[ ] that the plaintiff has failed to . . . establish . . . liability[.]"); *GSS Props., Inc. v. Kendale Shopping Center, Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988) (finding that plaintiff acted in bad faith when it withheld facts clearly known to it prior to filing the complaint and then moved to amend to either force the defendant to settle or punish the defendant for failing to settle).

Finally, permitting Plaintiff leave to amend would unduly prejudice Quintessa. Quintessa already incurred unnecessary legal fees and expenses and wasted time responding to Plaintiff's current bogus allegations. Plaintiff's decision to plead fabricated allegations in his original Complaint has inevitably delayed Quintessa's right to have this case decided on the merits. *See Feldman*, 850 F.2d at 1225 ("Parties to litigation have an interest in speedy resolution of their disputes without undue expense."). If Plaintiff is granted leave to amend, Quintessa will have to incur additional fees and expenses and spend more time responding to allegations that Plaintiff knew of before filing this lawsuit

**DEFENDANTS' JOINT 12(b)(6) MOTION TO DISMISS**

and that should have been included in his initial Complaint. *See, e.g.*, *In re DePugh*, 409 B.R. 84, 106 (Bankr. S.D. Tex. 2009) (denying leave to amend because forcing the creditor to incur fees and expenses to respond to allegations that the debtor should have pleaded at the outset of the litigation but knowingly chose not to as part of his litigation strategy would unduly prejudice the creditor).

Therefore, the Court should grant Defendants' Motions to Dismiss and dismiss Plaintiff's claims with prejudice without providing Plaintiff an opportunity to amend.

**D.      Alternatively, the Court Should Permit Jurisdictional Discovery to Determine Whether Plaintiff's Claims Should be Dismissed Under Rule 12(b)(1) for Lack of Standing.**

Under Rule 12(b)(1), a plaintiff's claims are subject to dismissal for lack of subject matter jurisdiction if the plaintiff cannot establish standing to bring his claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018). The plaintiff bears the burden of establishing standing for "each particular claim that he asserts." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730, 733 (1st Cir. 2016). For an individual to have standing under a "statutorily created cause of action," they must fall within the relevant statute's "zone of interest." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). The "zone of interest" inquiry considers "the Congressional intent of the statute" and whether the "complainant's interests were 'among the sorts of interests'" the statute was specifically designed to protect. *Chem. Serv., Inc. v. Env't Monitoring Sys. Lab.-Cincinnati of U.S. E.P.A.*, 12 F.3d 1256, 1262 (3d Cir. 1993).

In particularly egregious circumstances, courts have found that a prolific TCPA plaintiff who abuses the TCPA to manufacture claims for monetary gain falls outside of the TCPA's zone of interest and thus lacks standing to bring a TCPA claim. For example, in *Stoops v. Wells Fargo Bank, N.A.*, the court held that a plaintiff lacked standing because she "purchas[ed] cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages." 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016). As the court explained, the plaintiff's interests were not within the zone of interests intended to be protected by the TCPA:

> Indeed, it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance.

*Id.* (citations omitted).

Similarly, in *Garcia v. Credit One Bank, N.A.*, a plaintiff was found to not have standing to pursue a TCPA claim because he "kept re-purchasing pre-paid phone minutes, apparently in order to keep receiving unwanted calls" on "a cell phone that Garcia claims to have purchased for his father but never furnished to him." No. 218CV191JCMEJY, 2020 WL 4431679, at *1, *3 (D. Nev. July 31, 2020). Like in *Stoops*, the court in *Garcia* concluded that based on the plaintiff's efforts to manufacture a TCPA claim, the plaintiff's interests were "so marginally related to or inconsistent with the purposes implicit in the TCPA that it cannot reasonably be assumed that Congress intended to permit [his] suit." *Id.* at *3 (citations omitted).

Just like in *Stoops* and *Garcia*, there are substantial indications in this case that Plaintiff engaged in bad faith conduct to manufacture his TCPA claim. As detailed in Quintessa's 12(b)(2) Motion to Dismiss, Plaintiff intentionally misrepresented and omitted factual allegations in his Complaint in an attempt to fabricate jurisdictional allegations and a TCPA claim. Moreover, while Plaintiff alleges in the Complaint that his cell phone ending in "5482" is a residential number, see Dkt. #3 ¶ 96, since September 2021, Plaintiff has commenced at least 41 TCPA lawsuits involving at least nine different cell phone numbers.[7] Seeing as Plaintiff's entire bank of cell phones cannot all be considered "residential" within the meaning of the TCPA, this indicates that Plaintiff may be engaging in the same conduct as the professional TCPA plaintiffs in *Stoops* and *Garcia*: purchasing cell phones with the intent of receiving or soliciting calls for the sole purpose of collecting statutory damages under the TCPA. Notably, Plaintiff is currently facing sanctions in another TCPA case – *Cacho v. USHealth Advisors,*

---

[7] *See* Ex. A (Decl. of J. Cox), Ex. A-1 (Plaintiff's PACER Search Results), Ex. A-2 (Chart of Plaintiff's Alleged Phone Numbers).

**DEFENDANTS' JOINT 12(b)(6) MOTION TO DISMISS**                                    19

*LLC, et al.,* No. 6:23-CV-00737, pending in the United States District Court for the Middle District of Florida, Orlando Division – after refusing to produce documents aimed at confirming the allegations in his complaint and at discovering whether he operates a business of manufacturing TCPA claims.

Accordingly, should the Court decline to dismiss Plaintiff's claims under Rule 12(b)(6), Defendants request that the Court permit Defendants to conduct jurisdictional discovery to obtain evidence on whether Plaintiff has standing, including: whether Plaintiff solicited and consented to the alleged calls; whether Plaintiff intentionally fabricated the allegations in his Complaint; whether Plaintiff is purchasing cell phones with the intent to use them to bring TCPA claims; and whether Plaintiff is operating a business of manufacturing TCPA claims. Should Defendants' discovery efforts be successful, Plaintiff's claims should be dismissed under Rule 12(b)(1) for lack of standing. *See Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009) (indicating that a court may grant jurisdictional discovery if the movant alleges the need to conduct discovery on specific facts that, if true, could lead to dismissal of the subject claims under Rule 12(b)(1)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("The requirement that jurisdiction be established as a threshold matter . . is inflexible and without exception.") (internal quotation omitted).

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice for failure to state a claim under Rule 12(b)(6). Alternatively, Defendants request that the Court permit Defendants to conduct jurisdictional discovery to determine whether Plaintiff's claims are subject to dismissal under Rule 12(b)(1) for lack of standing.

Dated: July 18, 2025

*/s/ Jessica D. Cox*
Christopher J. Schwegmann
Texas Bar No. 24051315
Federal ID: 609501
cschwegmann@lynnllp.com
Jessica D. Cox
Texas Bar No. 24114769
Federal ID: 3888866
jcox@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR DEFENDANT
QUINTESSA LLC**

*/s/ Treshaun Meredith (signed with permission)*
Treshaun D. Meredith
Texas Bar No. 24091389
tmeredith@calhounmeredith.com
**THE LAW OFFICE OF TRE MEREDITH**
5444 Westheimer Road, Suite 1250
Houston, Texas 77056
(832) 430-6210 Telephone
(346) 223-1244 Facsimile

**ATTORNEY FOR DEFENDANT
THE LAW OFFICE OF TRE
MEREDITH, PLLC**

*/s/ Sharrad Owens (signed with permission)*
Texas Bar No. 24088170
so@robertsmarkland.com
**ROBERTS MARKLAND, LLP**
2555 N MacGregor Way
Houston, Texas 77004
(713) 630-0900 Telephone
(713) 630-0991 Facsimile

**ATTORNEY FOR DEFENDANT
ROBERTS MARKLAND, LLP**

---

**DEFENDANTS' JOINT 12(b)(6) MOTION TO DISMISS**                                          21

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2025, a true and correct copy of the foregoing was served via CM/ECF upon all parties and counsel of record.

/s/ *Jessica D. Cox*
Jessica Cox