IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **JOSHUA CACHO,** a Texas resident,<br><br>**Plaintiff,**<br><br>v.<br><br>**ROBERTS MARKLAND LLP,** a Texas Limited Liability Partnership, **LAW OFFICE OF TRE MEREDITH, PLLC,** a Texas Professional Limited Liability Company**, QUINTESSA LLC,** a Oklahoma Limited Liability Company,<br><br>**Defendants.** | § § § § § § § § § **Case No. 3:25-cv-00169-KC** § § § § § § § § |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### PARTIES

1.     Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in El Paso, Texas for all calls relevant to this case.

2.     Defendant ROBERTS MARKLAND LLP ("Markland") is a Professional Limited Liability Company organized and existing under the laws of Texas and can be served at 2555 N MacGregor Way, Houston, Texas 77004.

3.     Defendant LAW OFFICE OF TRE MEREDITH, PLLC ("Meredith") is a Professional Limited Liability Company organized and existing under the laws of Texas and can be served via registered agent Treshaun Meredith at 5444 Westheimer Road, Suite 1250, Houston, TX, 77056.

4.     Defendant QUINTESSA LLC ("Quintessa") is a Limited Liability Company organized and existing under the laws of Oklahoma and can be served via registered agent Lauren McNeil

pg. 1

at 1900 NW Expressway Suite, 1600 Oklahoma City, Oklahoma 73118.

5.    Unnamed Defendant Kareemiya Technologies & BPO d/b/a Auto Claims Solutions aka Car Accident Helpline ("Kareemiya") is an overseas marketing company hired by Quintessa with a physical address located at 3rd Floor, Jahanzeb Plaza, Bank Al-Habib Building, Bank Rd, Saddar, Rawalpindi, 46000, Pakistan. Kareemiya is outside the Jurisdiction of the United States and therefore unservable.

## JURISDICTION AND VENUE

6.    Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

7.    This Court has general personal jurisdiction over Defendants Markland and Meredith because they are Texas corporations.

8.    This Court has specific personal jurisdiction over Defendant Quintesa because Quintessa purposefully availed itself to the State of Texas and to this District, and there is a sufficient relation between Quintessa's purposeful contacts with Texas and the litigation:

   a)  Quintessa knew that it could be hailed into Court in Texas by virtue of entering into contracts with Markland and Meredith to perform telemarketing services in Texas to Texas residents.

   b)  It would be unfair for Plaintiff to have to prosecute this case in two different venues for the same nucleus of calls.

   c)  Quitessa would not be disadvantaged having to defend in Texas because it chose to contract with law firms in Texas. Conversely, Plaintiff would suffer a significant

financial burden if it had to prosecute the same case, with the same set of facts, in two different States.

d) The Court system would be unduly burdened if it had to try two cases based on the same set of phone calls in two different Federal Districts.

e) Quintessa purposefully targets Texas when marketing debt relief services and products and regularly conducts business in this District, including via telephone solicitation.

f) Quintessa called Plaintiff's El Paso-area phone number (915) to generate leads for their services.

g) Quintessa purposefully represented itself as being located in El Paso, TX, by spoofing Plaintiff's 915 area code phone number.

h) These calls to Texas injured Plaintiff in Texas, creating a causal link among Quintessa, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.,* 141 S. Ct. 1017 (2021).

## VENUE

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District.

10. This Court has venue over Defendants because the calls at issue in this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.    The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.    Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23.    The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id*. at § 227(a)(1)

24.    As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

25.    Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A]   predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

26.    In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

27.    A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

28.    The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in Texas.

29.    The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 up to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

30.    Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

31.    The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

### TEXAS BUSINESS AND COMMERCE CODE 305.053

32.     A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against

the person who originates the communication for")

**(1)** an injunction;

**(2)** damages in the amount provided by this section; or

**(3)** both an injunction and damages.

**(b)** A plaintiff who prevails in an action for damages under this section is entitled to the greater of:

**(1)** $500 for each violation; or

**(2)** the plaintiff's actual damages")

**(c)** If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of:

**(1)** $1,500 for each violation; or;

**(2)** three times the plaintiff's actual damages."

## FACTUAL ALLEGATIONS

**33.** Plaintiff's personal cell phone ending in 5482 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from Defendants.

**34.** Plaintiff personally registered the cell phone 5482 on the National-Do-Not-Call Registry on November 05, 2024.

**35.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him or his number ending in 5482 from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**36.** Plaintiff's cellular telephone 5482 is a private residential telephone, used for non-

business purposes only.

37.     Defendants Markland and Meredith are law firms that hired Quintessa to market their legal services.

38.     Defendant Quintessa is a lead generation company that specializes in motor vehicle accident and personal injury lead generation for law firms.

39.     Quintessa performs these lead generation activities via telephone solicitation.

40.     Defendant Markland and Meredith hired Quintessa to market their legal services, knowing that any client sent to Markland and Meredith by Quintessa would come from illegal telephone telemarketing conducted by Quintessa and/or Quintessa's hired agent.

41.     Quintessa knew, or should have known, that Markland and Meredith were not registered to telephone solicit in Texas.

42.     Defendant Quintessa hired Kareemiya to telemarket for them.

43.     Plaintiff was notified of Kareemiya's involvement through an email from address naveed_nisar@hotmail.com, dated May 6, 2025, at 7:31 PM. Mr. Naveed Ahmad, introduced himself as the owner of Kareemiya, and was reaching out to Plaintiff to take responsibility for Call #7 in this Complaint, from Caller ID 915-821-2659 on April 17, 2025, at 5:34 PM, in which Plaintiff was transferred to Quintessa.

44.     Kareemiya is a telemarketing company located in Pakistan hired by Quintessa to telephone solicit for car accident legal representation for attorneys hired by Quintessa.

45.     American Bar Association and Texas State Bar ethics guidelines bar Markland and Meredith from directly placing unsolicited phone calls on their own behalf. Markland and Meredith hired Quintessa as an end-around to the marketing prohibition.

46.     Defendants collectively made at least fifteen (15) unauthorized unsolicited calls to

Plaintiff's cellphone. All calls were made without Plaintiff's written or verbal consent. The calls are referred to herein as "The Calls."

47.     Calls #1-4: DNC Requests #1-4, between March 24, 2025, and April 16, 2025, Plaintiff received at least four (4) solicitation calls from Quintessa's agent Kareemiya soliciting car accident injury relief services. Plaintiff answered each time with "Hello" and, after a 3-5 second silent pause in line, was greeted by an audible "Boop" noise, followed by another 1-2 silent pause, and then was greeted by a telemarketer, that would provide a name and tell Plaintiff they were calling from "Car Accident Helpline" soliciting car accident injury relief services to Plaintiff by stating **"I'm calling today to verify if you have been in an auto accident over the last years, in which you have not received your compensation money yet."**

48.     On each call described above, Plaintiff told the caller that he was not interested and not to call back. Plaintiff delivered four do-not-call ("DNC") requests.

49.     Call #5: Plaintiff received a call to his personal cell phone ending in 5482 on April 17, 2025, at 5:17 PM from Quintessa's agent Kareemiya, displaying the Caller ID of 915-231-6507. Plaintiff answered with "Hello" and after a 3-5 second silent pause in line, was greeted by an audible "Boop" noise, followed by another 1-2 silent pause, and then was greeted by a Quintessa's agent Kareemiya representative, claiming to be calling from "Car Accident Helpline" soliciting Plaintiff in the same script used in calls #1-4, described in *Paragraph 46* of this Complaint. Plaintiff engaged the caller for the sole purpose of identifying the party(s) responsible for the calls from solicitors of "Car Accident Helpline." The call was disconnected without explanation.

50.     Calls #6: Plaintiff received another solicitation call from Quintessa's agent Kareemiya on April 17, 2025. Plaintiff answered with "Hello" and after a 3-5 second silent pause in line, was

greeted by an audible "Boop" noise, followed by another 1-2 silent pause, and then was greeted by a Quintessa's agent Kareemiya representative, claiming to be calling from "Car Accident Helpline" soliciting Plaintiff in the same script used in calls #1-4, described in *Paragraph 46* of this Complaint. Quintessa's agent Kareemiya disconnected the call without explanation.

51.     Call #7: Plaintiff received another solicitation call from Quintessa's agent Kareemiya. Plaintiff answered with "Hello" and after a 3-5 second silent pause in line, was greeted by an audible "Boop" noise, followed by another 1-2 silent pause, and then was greeted by a Quintessa's agent Kareemiya representative, claiming to be calling from "Car Accident Helpline" soliciting Plaintiff in the same script used in calls #1-4, described in *Paragraph 46* of this Complaint. Plaintiff engaged the caller to confirm the identity of the party responsible for the calls. Plaintiff was connected to "Lauren" from Quintessa.

52.     Lauren disconnected the call before providing any identifying information about any of the Defendants.

53.     Lauren did not disclose that she was a Quintessa representative.

54.     Call #8: On April 17, 2025, at 5:44 PM, Plaintiff received a solicitation call from Lauren from Quintessa with 817-642-9705 appearing on his caller ID. Plaintiff engaged Lauren for the purpose of identifying the party(s) responsible for the calls. Lauren disconnected the call before providing any identifying information.

55.     Call #9: On April 17, 2025, at 5:50 PM, Plaintiff received a solicitation call from Lauren that he was not able to answer. Lauren left a voice mail with a number to call back, 888-501-1788. Lauren did not properly identify any of the Defendants.

56.     Call #10: On April 17, 2025, at 5:52 PM, Plaintiff received a solicitation call from Lauren that left phone number 888-501-1788 as a call back number.

**57.** On April 17, 2025, at 5:57 PM. Plaintiff called the number provided in the voice mail from calls 9-10 (888-501-1788), for the sole purpose of identifying the party responsible for The Calls.

**58.** Plaintiff was transferred to Laura Lopez ("Lopez") of Quintessa, who stated that she sat right next to Lauren, whom Plaintiff had spoken with before. Lopez also revealed her full name and stated she lived and worked in Oklahoma.

**59.** During the phone call Lopez provided Plaintiff with a contract from Markland and Meredith via email.

**60.** On April 17, 2025, after the last call with Quintessa, Plaintiff was able to reveal Laura Lopez was employed by Quintessa by locating her Facebook Profile at www.facebook.com/uhitslaura, that lists Quintessa as her employer.

**61.** On April 18, 2025, Plaintiff received a phone call from Lopez of Quintessa. Plaintiff delivered a clear DNC Request and informed Quintessa he was not interested in their services.

**62.** Calls #11-14: Between April 19, 2025, through April 22, 2025, Plaintiff received four additional solicitation calls from Quintessa and Markland.

**63.** On April 22, 2025, at 2:00 PM, Plaintiff received an email from Quintessa stating Plaintiff was **"placed on Quintessa's internal DNC list on 4/19 immediately after your DNC request was received, and Quintessa has record of any call with you after that date."** This email acknowledges the DNC Plaintiff made on April 18, 2025, and confirms Quintessa's involvement in The Calls.

**64.** *Table A* displays calls received from Defendants and or their agent(s), and or their sub-agent, or employees.

Table A

| No: | Caller ID: | Date: | Time: | Notes: |
|---|---|---|---|---|
| 1 | 915-231-6312 | Mar 24, 2025 | 12:37 PM | Unauthorized solicitation - Car Accident Helpline – DNC Request provided |
| 2 | 915-231-6369 | Mar 25, 2025 | 1:37 PM | Unauthorized solicitation - Car Accident Helpline – DNC Request provided |
| 3 | 915-231-6829 | Apr 02, 2025 | 5:47 PM | Unauthorized solicitation - Car Accident Helpline – DNC Request provided |
| 4 | 915-213-6103 | Apr 16, 2025 | 10:48 AM | Unauthorized solicitation Car Accident Helpline – DNC Request provided |
| 5 | 915-231-6507 | Apr 17, 2025 | 5:17 PM | Unauthorized solicitation Car Accident Helpline – line disconnected |
| 6 | 915-562-1991 | Apr 17, 2025 | 5:24 PM | Unauthorized solicitation Car Accident Helpline – line disconnected |
| 7 | 915-821-2659 | Apr 17, 2025 | 5:34 PM | Unauthorized solicitation Car Accident Helpline – line disconnected |
| 8 | 817-642-9705 | Apr 17, 2025 | 5:44 PM | Unauthorized solicitation from Quinessa – line disconnected |
| 9 | 817-642-9705 | Apr 17, 2025 | 5:50 PM | Unauthorized solicitation from Quinessa – Voice Mail |
| 10 | 888-974-2224 | Apr 17, 2025 | 5:52 PM | Unauthorized solicitation from Quinessa – Text |
| | 888-501-1788 | Apr 17, 2025 | 5:57 PM | Called out - Received information on this call for parties involved |
| | | Apr 18, 2025 | | Delivered a DNC Request |
| 11 | 405-977-4484 | Apr 19, 2025 | 7:31 AM | Unauthorized solicitation from Quintessa |

| 12 | 405-977-4484 | Apr 20, 2025 | 7:30 AM | Unauthorized solicitation from Quintessa |
| 13 | 713-630-0900 | Apr 21, 2025 | 7:30 AM | Unauthorized solicitation from Markland |
| 14 | 405-977-4484 | Apr 22, 2025 | 7:31 AM | Unauthorized solicitation from Quintessa |

65.     Every solicitation call from Defendants and or their agent or sub agent Kareemiya after March 25, 2025, was a knowing and willful violation of the TCPA as Plaintiff had Delivered a DNC request to Kareemiya acting on behalf of Defendants, on March 24, 2025.

66.     Plaintiff did not provide his phone number to Defendants or their agent/ sub-agent Kareemiya at any point prior to the receipt of the initial phone call.

67.     Plaintiff only provided Defendants and or their agent or sub agent Kareemiya, his phone number to inform Defendants what phone number to add to their internal Do Not Call lists.

68.     Defendants did not have a written do-not-call policy while Defendants were placing solicitation phone calls to Plaintiff.

69.     Defendants Markland, Meredith, Quintessa, and Quintessa's agent Kareemiya did not train their employees and/or agents on the existence and use of any do-not-call list.

70.     Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

71.     Defendants Markland, Meredith, Quintessa and Quintessa's agent Kareemiya knew or should have known the requirements for making TCPA-compliant

telemarketing calls and thus knew or should have known that the calls complained of herein violated the TCPA and its regulations.

72.     Defendants Markland, Meredith and Quintessa,and Quintessa's agent Kareemiya knew or should have known the requirements for making TCPA and Texas sales-compliant telemarketing calls, and thus knew or should have known that the unauthorized solicitation calls and the many disregarded DNC requests complained of herein violated the TCPA, Texas Business Commerce Code 302.101 and all of their regulations.

73.     A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Each violation constitutes a separate offense. Texas Business and Commerce Code 302.252.

74.     Quintessa knew, or should have known, Markland and Meredith were not registered to telephone solicit in Texas.

75.     Defendants violated Texas Penal Code § 38.12 when, with the intent to obtain professional employment, they used coercion, duress, fraud, intimidation, misleading, deceptive, and false claims. Penal Code 38.12(d)(1)(2)(E-F) Barratry and Solicitation of Professional Employment

76.     A person who was solicited by conduct violating Section 38.12 (Barratry and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry

77.     A person who prevails under Subsection (c) shall recover from each person who engaged in barratry:

(1) A penalty in the amount of $10,000;

(2) actual damages caused by the prohibited conduct; and

(3) reasonable and necessary attorney's fees.

78.    No emergency necessitated these calls.

79.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## DEFENDANTS MARKLAND, MEREDITH, AND QUINTESSA ARE VICARIOUSLY LIABLE FOR THE CALLS MADE BY QUINTESSA AND KAREEMIYA

80.    Markland and Meredith are "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as the employees of Quintessa and/or Quintessa's agent Kareemiya. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

81.    Markland and Meredith authorized Quintessa to market their legal services.

82.    Markland and Meredith set the minimum qualifications for legal representation, provided those qualifications to Quintessa, instructed Quintessa on how to use the minimum qualifications, and required Quintessa to use those guidelines.

83.    Quintessa in turn hired Kareemiya as an agent to telemarket unsuspecting individuals on Markland and Meredith's behalf.

84.    Kareemiya was the sub agent of Markland and Meredith.

85.    Markland and Meredith instructed Quintessa on the age requirements of potential clients they would accept, they provided questions and inquiries to make to Quintessa question and inquire to unsuspecting potential customers to prequalify each potential client before sending

them over. These questions and inquiries consisted of:

    a.   A detailed account of the story of the event that led to the accident;

    b.   whether the potential client was at fault, or not at fault;

    c.   the injuries sustained if any during the accident;

    d.   if the potential client went to the hospital or not;

    e.   the length of stay at the hospital and diagnosis received;

    f.   any medical procedures that resulted in the accident and possible injuries;

    g.   a copy of police incident report and case number;

    h.   if the potential client had already retained an attorney;

    i.   and what to say if they had already retained an attorney.

**86.** Quintessa took Markland and Meredith's prequalification questions and inquiries and instructed Kareemiya to make sure an unsuspecting potential client met all the requirements before transferring to Quintessa.

**87.** Quintessa also provided Kareemiya with rebuttals to use if necessary, that were approved beforehand by Markland and Meredith.

**88.** Markland and Meredith's agent Quintessa and Quintessa's agent Kareemiya made unsolicited phone calls to market the products and services of Defendants Markland and Meredith

**89.** Quintessa also provided Kareemiya with rebuttals to use if necessary, that were approved before hand by Markland and Meredith.

**90.** Markland's contract agreement has a section in it soliciting the services of Meredith and a contractual agreement of Meredith, which the **Consent to Association** states:

    **"The undersigned, as Client(s), hereby consent to the association of LAW OFFICE**

**OF TRE MEREDITH, PLLC, co-counsel for Client (s). Client(s) further consent to a fee sharing agreement between the Originating Attorney and LAW OFFICE OF TRE MEREDITH, PLLC."**

91.    Markland and Meredith wrote the script, or at least approved the script, used by both Quintessa and Kareemiya to market the legal services of Markland and Meredith.

92.    Markland and Meredith instructed Quintessa on which states they will work with.

93.    Quintessa instructed Kareemiya on which states to call to qualify the prospective clients.

94.    Markland and Meredith pay Quintessa directly for each referral due to the illegal solicitation telemarketing calls made by Quintessa and its agent Kareemiya.

95.    Markland and Meredith have a contract with Quintessa appointing Quintessa as their sales agent.

96.    Quintessa has a contract with Kareemiya appointing Kareemiya as their marketing agent.

97.    Both Markland and Meredith are fully aware that every client received through Quintessa has been sent to them initially through illegal telemarketing unsolicited calls made by Kareemiya.

98.    Texas Business and Commerce Code 302.101 makes the seller directly liable for all solicitation phone calls made by their authorized salespersons.

99.    Quintessa is the authorized salesperson of both Markland and Meredith and Kareemiya is the authorized marketing company for Quintessa.

100.    Kareemiya is the agent of Quintessa, and Quintessa is the agent of Markland and Meredith. Kareemiya is the sub-agent of Markland and Meredith.

101.	Quintessa is liable for all solicitation phone calls made by their agent Kareemiya.

102.	Markland and Meredith are liable for all solicitation phone calls made by their authorized salesperson Quintessa and their sub-agent Kareemiya.

### TEXAS BUSINESS AND COMMERCE CODE 302.101

103.	Plaintiff was located in Texas at all times during the calls at issue.

104.	Plaintiff has been a Texas resident since July 2023.

105.	On May 5, 2025, Plaintiff searched for a telephone solicitation registration for Defendants Markland, Meredith, and Quintessa at

https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

106.	Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration.  Plaintiff did not find any registration for Defendants Markland, Meredith or Quintessa.

107.	Defendants Markland, Meredith, and Quintessa have never been registered to telephone solicit from Texas, or into Texas.

108.	Quintessa has been made aware of the Texas telephone solicitation registration requirement on multiple occasions and has refused to register.

109.	Quintessa willfully violates the Texas telephone solicitation requirement.

### <u>INJURY, HARM, DAMAGES, and ACTUAL DAMAGES</u>

### <u>AS A RESULT OF THE CALLS</u>

110.	Defendants and/or their agent(s), sub-agent(s), and/or employee(s)' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

111.	Defendants and/or their agent(s), sub-agent(s), employee(s), and/or coworker(s)'

calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

112.    Defendants and/or their agent(s), sub-agent(s), and/or employee(s)' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

113.    Plaintiff has been harmed, injured, and damaged by the calls, including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

114.    The calls were to Plaintiff's cellular phone number 915-200-5482 which is Plaintiff's personal phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### CAUSES OF ACTION:

### COUNT ONE:
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**
**(against all Defendants)**

115.    Plaintiff incorporates the preceding paragraphs 1-114 as if fully set forth herein.

116.    Defendants and or their agent and sub-agents called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry

more than thirty-one (31) days prior to the calls, for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

117.    Plaintiff was statutorily damaged at least fourteen (14) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

118.    Plaintiff was further statutorily damaged because Defendants' and or their agents and sub-agent's calls willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

119.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO
### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (against all Defendants)

120.    Plaintiff incorporates the preceding paragraphs 1-119 as if fully set forth herein.

121.    Defendants and or their agents and sub-agents made at least fourteen (14) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code § 302.101.

122.    Defendant Quintessa their agent Kareemiya made the sales calls while knowing Defendants Markland and Meredith were not registered to telephone solicit in Texas.

123.    As a result of Defendants Markland and Meredith's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code § 302.302(a).

**124.**    As a result of Defendant Markland and Meredith's violations of Tex. Bus. and Com. Code § 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.  Tex. Bus. and Com. Code § 302.302(d).

<u>**COUNT THREE**</u>
**Violations of Texas Business and Commerce Code 305.053**
**(against all Defendants)**

**125.**    Plaintiff incorporates the preceding paragraphs 1-124 as if fully set forth herein.

**126.**    Defendants and or their agent and sub-agent called Plaintiff's private residential telephone number which violated 47 U.S.C. § 227 (c).

**127.**    As a result of Defendants and or their agent and sub-agent violations of Tex. Bus. And Com. Code § 305.053 Plaintiff is entitled to the greater of $500; or the Plaintiff's actual damages, for each violation. Tex. Bus. And Com. Code § 305.053(b)(1)(2).

**128.**    Plaintiff is entitled to an award to not more than the greater of $1,500 for each knowing or willful violation of Tex. Bus. And Com. Code § 305.053(c)(1)(2).

**COUNT FOUR**

**Violation of 82.0651 Civil Liability for Prohibited Barratry**

**(Against All Defendants)**

**129.**    Plaintiff incorporates the preceding paragraphs 1-125 as if fully set forth herein

**130.**    Barratry is the solicitation of employment to prosecute or defend a claim with the intent to obtain a personal benefit. *State Bar of Tex. V. Kilpatrick*, 874 S. W.2d 656, 658 n.2 (Tex.1994).

**131.**    Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited Solicitations and Payments.

**132.**    Rule 7.03 provides, in relevant part, as follows:

    (a)  A lawyer shall not by in-person contact as defined in paragraph (f) seek

professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain…

As used in paragraph (a), "regulated telephone or other electronic contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means. *Id.* R. 7.03(a), (f)

133. A lawyer shall not send, or deliver, or knowingly cause another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

134. Plaintiff was solicited for legal services by Defendants Markland and Meredith's agent Quintessa and Quintessa's agent Kareemiya. Plaintiff did not initiate communication with Defendants Markland and Meredith or their agent or sub-agent.

135. Plaintiff was targeted by Defendants Markland and Meredith despite not having a preexisting relationship with said Defendants.

136. Defendants Markland and Meredith's conduct violated at least Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

137. Plaintiff was solicited on behalf of Defendants Markland and Meredith so that Defendants Markland and Meredith would benefit financially.

138. Defendants Markland and Meredith knew or should have known that its authorization to tele-solicit clients was in violation of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct and Section 38.12(b) of the Texas Penal Code.

139. A person commits an offense if, with intent to obtain an economic benefit the person solicits employment, either in person or by telephone, for himself, or for another. Penal Code

Section 38.12(a)(2).

140.    A person commits an offense if, with intent of obtaining an economic benefit the person pays, or gives of offers to pay or give a person money or anything of value to solicit employment. Penal Code Section 38.12(a)(4).

141.    Defendants Markland and Meredith violated Texas Penal Code to § 38.12 when it solicited employment for itself by telephone to obtain economic benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment

142.    Defendants Markland and Meredith violated Texas Penal Code § 38.12 when it with intent to obtain professional employment used coercion, duress, fraud, intimidation, misleading, deceptive, and false claims. Penal Code 38.12(d)(1)(2)(E-F) Barratry and Solicitation of Professional Employment.

143.    A person who was solicited by conduct violating Section 38.12 (Barrarty and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

144.    A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $10,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants Markland, Meredith, and Quintessa jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants and/or their agent(s), employee(s), and/or coworker(s)' calls violates the TCPA, and Texas Business and Commerce;

C.      An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 14 calls;

D.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for 14 calls;

E.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for 14 calls;

F.      An award of $10,000 in statutory damages per Defendant arising from violations of Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct;

G.      An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity;

H.      Such further relief as the Court deems necessary, just, and proper.


## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

August 8, 2025,                                        Respectfully submitted,

*Joshua Cacho*

Joshua Cacho
Plaintiff, Pro Se
P.O. Box 26971
El Paso, TX 79926
Jcacho1848@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, I caused a true copy of the foregoing,

PLAINTIFF'S FIRST AMENDED COMPLAINT to be served to opposing counsels for

Defendants via email.

Dated August 8, 2025,                                 Respectfully Submitted,

*Joshua Cacho*

JOSHUA CACHO
Plaintiff, Pro Se

pg. 26